**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRENE CHABAK, ARMANDO CARRASCO, RANDY POLK, KELLY WILSON, THOMAS BOOTH HARRIS, SCOTT WEISCOPE, LAVINA HENDERSON, JEREMY HENDERSON, and RAYCINE SOMMERS, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> SOMNIA INC., ANESTHESIA SERVICES OF SAN JOAQUIN P.C., PALM SPRINGS ANESTHESIA SERVICES P.C., RESOURCE ANESTHESIOLOGY ASSOCIATES OF IL P.C., RESOURCE ANESTHESIOLOGY ASSOCIATION OF NM INC., and ANESTHESIA ASSOCIATES OF EL PASO, P.A., <br><br> Defendants. | Case No.: 7:22-cv-9341-PMH <br><br><br><br><br> **STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI") AND HARD COPY DOCUMENTS** |

Pursuant to the Stipulation of the Parties, IT IS HEREBY ORDERED as follows:

This Stipulated Protocol for Producing Documents and Electronically Stored Information (the "ESI Protocol") shall, on a going forward basis, govern the production of  electronically stored information ("ESI") by the parties in the above-captioned litigation.

The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third  party or otherwise ordered by the Court.  Accordingly, the ESI Protocol must be attached to any subpoena issued in this action.

2913571.3

## I.      Production of Documents Originating as Paper

1.      **TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape) where reasonably possible. TIFF image files should be provided in an "Images" folder.

Documents containing color need not be produced in color. However, the parties will consider reasonable requests for reproduction of a color document if an original document contains color necessary to understand the meaning or content of the document. Any documents produced in color should be produced in JPG format.

2.      **Unitizing Documents**. In scanning paper documents, the parties will utilize logical unitization of documents such that distinct documents may not be merged into a single record, and single documents may not be split into multiple records (*i.e.*, paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. The parties will undertake reasonable efforts to, or have their vendors, logically unitize documents in accordance with the requirements of this paragraph, but nothing in this paragraph shall require the parties to undertake efforts to unitize documents that would be unduly burdensome. The parties agree to meet and confer to address situations in which a party believes that documents have not been properly unitized.

3.     **Parent-Child Relationships**. The parties shall undertake reasonable efforts to preserve parent-child relationships within a document family (the association between an attachment and its parent document). The child document(s) should be consecutively produced immediately after the parent document. Nothing in this paragraph shall require the parties to undertake unduly burdensome efforts to preserve parent-child relationships within a document family for hard copy documents. The parties agree to meet and confer to address situations in which a party believes that parent-child relationships have not been adequately preserved.

4.     **Optical Character Recognition**. The producing party shall provide optical character recognition ("OCR") text files for all documents originating as paper. Text files should be in Unicode [UTF-8] format. All references below to 'Unicode' are synonymous with UTF-8. To the extent that documents have been run through OCR software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

5.     **Unique IDs**. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC0000001). A single prefix with a fixed width should be used for each producing party, along with a fixed-width numerical portion. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

6.      **Data Load Files**. Documents shall be provided with: (a) a delimited data file (.dat, .csv, or .txt) [Unicode]; and (b) an image load file (.lfp, .opt, or .dii), as detailed in Appendix 1.

## II.      Production of ESI

7.      **TIFFs.** Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Whenever it is practical to do so, the document's original orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFFs of ESI shall convey the same information and image as the original document, including all commenting, versioning, and formatting that is visible in any view of the document in its native application. All hidden text will be expanded, extracted, and rendered in the TIFF file and, to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

8.      **Extracted Text Files**. For each document, a single Unicode text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file to the extent reasonably available unless the document is an image file or contains redactions. In these instances, a text file created using OCR should be produced in lieu of extracted text.

9.      **Unique IDs**. Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC0000001), taking into consideration the estimated number of pages

to be produced. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

10.    **Parent-Child Relationships**. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. The Parties agree that if any part of a document or its attachments is responsive, then the entire document and attachments will be produced, except in the case of ESI compiled into compressed (e.g., zip) folders, PDF binders, hard copy documents not physically affixed to one another, or documents that are part of families from which items have been withheld or redacted on the basis of privilege or other protection from disclosure. The parties agree to meet and confer to discuss the treatment of non-privileged non-responsive documents within parent-child families, particularly with respect to attachments and embedded files of little or no informational value. Furthermore, non-responsive attachments to documents withheld on the basis of privilege or other protection from disclosure need not be produced. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment or embedded document and its parent document) are preserved, particularly for emails. Each document produced by a Party shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file, and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. In the case of standalone documents, without attachments, the Beg/EndBates and Beg/EndAttach values will be identical.

11.     **Native Format**. Excels, PowerPoints, delimited text files, audio files, video files, and additional documents of a type which cannot be reasonably converted to useful TIFF images shall be produced as native files along with extracted text and metadata identified in Appendix 2. Natively produced documents should include a Bates-numbered TIFF image placeholder stating that the document has been produced in native format.

12.     The requesting party may ask for certain other documents and/or databases initially produced in TIFF format to be produced in their native format in the event that the TIFF format is not reasonably usable. The requesting party shall identify the documents by their Bates numbers and the documents should be produced in their unaltered native format, provided, however, that the producing party shall not be required, absent extraordinary circumstances, to produce any redacted files in native format.

13.     To the extent that the information in a native file must be redacted, the producing party may produce TIFF images with burned in redactions in lieu of a native file and TIFF placeholder image. The producing party shall make reasonable efforts to ensure redacted TIFF images of native files are legible and usable. If redacting TIFF images and to the extent that any of the following can be automated, the producing party, or its e- discovery vendor, should make reasonable efforts to: (1) reveal hidden rows, columns, or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths and row heights to avoid numbers or other text content being truncated or appearing as "#######"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; and (7) process spreadsheets so that they print across then down. If good cause exists, requesting party may ask the producing party to manually undertake the foregoing

for certain documents identified by Bates number by the requesting party to the extent the document was originally produced with concealed information. The producing party shall not unreasonably deny such a request.

14.      **Request for Native Files**. Other than the file types referenced in paragraph 12 above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests. In the event the producing party agrees to produce documents in native format, the producing party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields set forth in Appendix 2. Documents and overlays shall be produced within 21 days of the request unless the request is reasonably denied, or the parties agree to a different time. The parties shall meet and confer concerning any request for native files before seeking Court intervention. <ins>and shall comply with the Court's Individual Practices</ins> In the event the Court orders a producing party to *PMH* produce documents in native format, documents and overlays shall be produced within 14 days of the order or such other time as the Court may order.

15.      **Tracked Changes and Comments**. To the extent that a document contains tracked changes or comments, the document should be imaged showing tracked changes and comments.

16.      **Embedded Documents.** If reasonably possible, embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted,

- 7 -

produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, *etc.*) via the BegAttach and EndAttach fields referenced in Appendix 2. Related documents will be produced within a continuous Bates range. Nothing in this paragraph will require a party to extract or produce information from an embedded or attached internet link.

17.     **Data Load Files**. Documents shall be provided with: (a) a delimited data file (.dat, .csv, or .txt) [Unicode] and (b) an image load file (.lfp, .opt, or .dii) as detailed in Appendix 1. Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

18.     **Metadata**. Appendix 2 sets forth the metadata fields that must be produced to the extent that metadata exists for a particular document subject to the limitations discussed below. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data. The parties are not obligated to populate manually any metadata fields except those fields marked with an "X" in the "Must Be Populated" field in Appendix 2, provided that the metadata exists, is

reasonably accessible or available, and would not be unduly burdensome to collect.

19.     **Deduplication**. Documents should be deduplicated at the family-group level provided that the producing party identifies the additional custodians in an Additional Custodian field. A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any substantive differences to the

2913571.3

thread such as changes in recipients (*e.g.*, side threads, subject line changes), selective deletion of previous thread content by sender, *etc.* Where a prior email contains an attachment, that email and attachment shall not be removed as a "near- duplicate."

### III.   Production of Databases and Other Structured Data

20.    If a database or other source of structured data contains responsive information, the parties should meet and confer to determine a mutually agreeable format for producing the database or other structured data. Before meeting and conferring, the producing party will provide the following information about the database or structured data to the receiving party.

Database Name; Type of Database; Software Platform; Software Version; Business Purpose; Users;

Size in Records;

Size in Gigabytes (GB);

A List of Standard Reports;

Identity of the Database Owner or Administrator: Field List; and

Field Definitions (including field type, size, and use).

### IV.   Production of Audio and Video Recordings

21.    If audio and/or video recordings are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the audio and/or video recording. Before meeting and conferring, the producing party will provide the following information about the responsive audio and/or video recordings to the receiving party.

Date of the recording; Duration of the recording;

Names of individuals who were recorded; Event being recorded;

Whether the recording is digital or analog; Size in Megabytes (MB) of digital recordings;

Whether minutes for the event being recorded were prepared; and

Whether Certified Legal Transcription was prepared by a Certified Court Reporter.

## V.     Transcripts

22.     If deposition or other transcripts are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the transcripts. Before meeting and conferring, the producing party will provide the following information about the responsive transcripts. To the extent that the information listed below does not exist, is not reasonably accessible or available, or would be unduly burdensome to obtain, nothing in this ESI Protocol shall require any party to extract, capture, collect or provide such information.

Date of the deposition, trial, hearing or other event (each an "event");

Duration of the event;

Name of the individual(s) who was/were recorded;

The forms in which the transcripts exist such as PDF, text file, livenote or etranscript format (.lef, .ptx, or .ptz); and

List of exhibits associated with the transcript and/or event.

## VI.    Processing of Third-Party Documents.

23.     A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

24.     The Issuing Party may request that the non-party simultaneously produce documents to the Issuing Party and all other parties. If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other parties within seven (7) calendar days.

25.     Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or nonparties to object to a subpoena.

**VII.     Miscellaneous Provisions.**

26.     The following specifications govern the production of all documents regardless of source, unless otherwise noted in this ESI Protocol

27.     **Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, *etc*.) should be produced in such a fashion as to identify the department, group, entity, or facility. A producing party shall use a uniform description of a particular custodian across productions.

28.     **Foreign Language**. Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

29.     **Dates**. All documents shall be processed so as to show the date and time in UTC or Eastern Standard Time.

30.     **Search Terms and Technology Assisted Review**. The parties will meet and confer relating to the process of searching for documents responsive to discovery, including, specifically, whether the parties will utilize search terms or technology assisted review ("TAR"). The parties will further meet and confer and will identify and discuss the custodian and non-

custodial sources that will be included in responding to specific discovery requests. The parties will identify any sources of information responsive to specific discovery requests that party contends is not reasonably accessible due to burden or cost.

31. **Production Media**. The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. To the extent possible, physical media should be write protected before it is produced.

32. **Privilege Logs**. Should any documents or information be withheld by either party on the basis of attorney/client privilege, work-product privilege, a joint-defense privilege or any other applicable privilege, immunity or protective doctrine, the Party withholding the document or information will provide a privilege log.

**(1)** When using a traditional privilege log, the parties will state the following information separately for each document or portion of a document withheld:

(a) a sequential number associated with each Privilege Log record (i.e., a privilege log ID number);
(b) the specific privilege, protection, or immunity claimed;
(c) the type of document (e.g., e-mail, memo, letter, presentation, etc.);
(d) the date of the document, which may be extracted in an automated fashion via available metadata;
(e) to the extent reasonably available, the author(s) of the document, which may be extracted in an automated fashion via available metadata;
(f) to the extent reasonably available, the sender(s), addressee(s) and/or recipient(s) (including "cc" and "bcc" recipients) of the document, which may be extracted in an automated fashion via available metadata;
(g) the custodian(s) of the document;
(h) the Bates number range of the document, if applicable;

- 12 -

(i) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the general subject matter of the document and the basis of the claim of privilege or immunity; and

(j) the names of all attorneys or law firms who played a role connected with the privileged nature or withholding of the document or information. Attorneys who are a sender or recipient of the document shall be indicated with a "*" next to their names in the log.

**(2)** Before producing their privilege logs, the Parties shall meet and confer to discuss whether the cost benefits of a categorical privilege log and other tools/workflows to streamline and reduce the burden associated with the privilege log process may be appropriate for any categories of documents, while still supplying sufficient information regarding the privilege assertion, and if so, what information a categorical privilege log would contain.

**(3)** If a claim of privilege applies to only a portion of a document, the document should be produced, and the portion claimed to be privileged obscured and stamped "Redacted."

**(4)** Additionally, the Parties shall meet and confer regarding whether any redacted documents need to be listed on a traditional privilege log (as set forth above).

**(5)** Privilege logs shall be produced in spreadsheet (.xls) or equivalent native format. The following documents presumptively need not be included on a privilege log.

(a) communications exclusively between a Party and its outside counsel regarding the litigation;

(b) work-product created by outside counsel, or where applicable by an agent of outside counsel (other than a Party), that constitutes or reflects legal advice to the producing Party or reveals the thought process of its counsel, which has not been shared with third parties (apart from other agents assisting in the preparation of that advice); and

(c) documents not responsive to the requesting Party's substantive document requests.

**(6)**  The Parties shall meet and confer in good faith regarding any additional substantive and formatting requirements for privilege logs.

33.  **Naming Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, *etc*. The compressed file should be named so as to indicate the producing party, the date of the production, and the sequence of the production (*e.g.*, "Somnia Production 20221010-001"). If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in *Chabak, et. al, v. Somnia Inc., et al.*,  Court File  No.  7 : 22-cv-9341-PMH (S.D.N.Y.); (b) the Bates Number range of the materials contained on the media; (c) and the filename(s) of the compressed file(s) contained on the media such as the example included above.

34.  **Replacement Productions**. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

35.  **Inability to Produce Metadata**. If the producing party is unable to produce metadata for a particular field, it will provide an explanation of that inability if requested by the receiving party.

36.  **Encrypted Data**. To the extent data is encrypted before it is produced, the producing party shall contemporaneously transmit the credentials necessary to decrypt the data.

37.  **Non-Waiver**. Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client

privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

38.     **Protective Order**. All productions are subject to the Protective Order entered by the Court in this Action.

39.     **Good Faith Resolution of Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties in compliance with the applicable federal and local rules, and shall comply with the Court's Individual Practices. *PMH*

- 15 -

Dated: December 22, 2023

_/s/ Jason L. Lichtman_____
Jason L. Lichtman
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: 212.355.9500
Email: jlichtman@lchb.com

_/s/ Todd S. Garber_____
Todd S. Garber
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY 10601
Telephone: 914-298-3284
Email: tgarber@fbfglaw.com

*Interim Co-Lead Counsel for the*
*Proposed Classes*

_/s/ Christopher G. Dean_____
Christopher G. Dean
**MCDONALD HOPKINS LLC**
600 Superior Ave.
Cleveland, OH 44114
Telephone: 216.348.5400
Email: cdean@mcdonaldhopkins.com

William P. Harrington, Esq.
Susan E. Galvão, Esq.
Adam Rodriguez, Esq.
**BLEAKLEY PLATT & SCHMIDT, LLP**
One North Lexington Avenue
White Plains, New York 10601Phone: (914)
949-2700
Email: wpharrington@bpslaw.com
        sgalvao@bpslaw.com
        arodriguez@bpslaw.com

*Counsel for Defendants*

SO ORDERED.

_____
Philip M. Halpern
United States District Judge

Dated: White Plains, New York
        December 22, 2023

- 16 -

2913571.3

## APPENDIX 1: PRODUCTION MEDIA AND LOAD FILE FORMATS

**Production Media**

- The Producing Party shall produce documents via secure FTP site or, in accordance with Paragraphs 31 above, on readily accessible, computer or electronic media including CD-ROM, DVD, external hard drive (with standard PC compatible interface or access to a secure Online Repository agreed upon by the parties) or Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media. The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates Number the documents produced.

**Image Load Files**

- Production image load files shall have all corresponding images logically grouped together;

- Production volumes should only include one image load file per production volume;

- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii[1] extension (*e.g.*, ABC001.lfp);

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, ...);

- The load file shall contain one row per TIFF or JPG image;

- Every image in the delivery volume shall be contained in the image load file;

- The image key shall be named the same as the Bates number of the page;

- Load files shall ***not*** span across media (*e.g.*, CDs, DVDs, hard drives, *etc*.), *i.e.*, a separate volume shall be created for each piece of media delivered.

**Metadata Load Files**

- The metadata load file shall use the following delimiters:

---

[1] If a .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file itself.

> Column Delimiter: ASCII character (020)
> Text Qualifier: þ ASCII character (254);
> New line: Registered sign - ® (ASCII 174).

- Data for documents shall be produced in only one data load file throughout the productions, unless that document is clearly noted as being a replacement document or if supplemental custodian information is provided;

- The first line shall contain the field names in the order of the data set forth in Appendix 2;

- Metadata fields that are not applicable to a document shall still be populated in the data load file with Empty Quotes, eg |^^|^^, *etc*;

- A carriage-return line-feed shall be used to indicate the start of the next record;

- Load files shall ***not*** span across media (*e.g.*, CDs, DVDs, hard drives, *etc*.); a separate volume shall be created for each piece of media delivered;

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (*i.e.*, ABC001.dat);

The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et seq.*).

## APPENDIX 2: ESI METADATA AND CODING FIELDS

| Field | Description | Must Be Populated |
|---|---|---|
| BegBates | Beginning Bates number of the document | X |
| EndBates | Ending Bates number of the document | X |
| BegAttach | Beginning Bates number of the attached documents | X |
| EndAttach | Ending Bates number of the attached documents | X |
| AttachRange | Bates number of the first page of the parent document to the bates number of the last page of the last attachment "child" document | X |
| Page Count | Total number of pages in the document | X |
| Attachment Count | Indicates the number of attachments to the parent document | X |
| Custodian | Natural person, group, department, entity, *etc.* in whose possession the document was found Custodian names, including those listed within the "Additional Custodian" field, should be uniform and unambiguous per Custodian, in the format Lastname, Firstname. If multiple custodians share the same first and last name, individuals should be distinguished by an initial which is kept constant between productions (e.g. "Smith, John A." and "Smith, John B.") | X |
| Additional Custodian | Other natural person(s), group(s), department(s), entity(ies), *etc.* in whose possession the document was found if duplicate versions of the document are not produced | X |
| File Size | Size in kilobytes (KB) of the document | X |
| NativeLink | Relative file path to each native document in the production (This field will be produced with all native ESI). | |
| TextPath | The relative path to the corresponding OCR or extracted text file included with a production volume | X |
| Hash Value | MD5 or SHA-1 Hash value, unique document identifier | X |

2913571.3

| Redacted | Yes or No indication of whether the document at issue is redacted. | X |
|---|---|---|
| Author | Author field extracted from the metadata of the native file | X |
| From | Email sender | X |
| To | Person to whom an email is addressed | X |
| CC | Recipient(s) of "carbon copies" of the email message | X |
| BCC | Recipient(s) of "blind carbon copies" of the email message | X |
| Subject | Subject field extracted from the metadata of the native file | X |
| Date Sent | Date the email message was sent (produced in MM/DD/YYYY format) | X |
| Time Sent | Time the email message was sent (produced in HH:MM AM/PM | X |
| DateReceived | Date email was received | X |
| TimeReceived | Time email was received | X |
| Importance | For emails, "High," "Low," or "Normal" (or equivalent if an email client other than Outlook was used); Null if no value selected | X |
| Sensitivity | For Outlook (or equivalent) emails, "Normal," "Private," "Personal," or "Confidential"; Null if no value selected | |
| Read Status | Read or Unread | |
| Has Attachments | Indicates that an email has attachments | X |
| File Type | Email, attachment, individual file, paper, *etc.* | X |
| File Extension | File extension of document (.msg, .doc, .xls, *etc.*) | X |
| File Name | Name of original file | X |
| Original Path | The original file path for non-email ESI | |
| Title | Title of a non-email document (Microsoft Title field) | X |

| Date Created | For non-emails (produced in MM/DD/YYYY format) | X |
|---|---|---|
| Time Created | For non-emails (produced in HH:MM AM/PM format) | X |
| Date Last Modified | For non-emails (produced in MM/DD/YYYY format) | X |
| Time Last Modified | For non-emails (produced in HH:MM AM/PM format) | X |
| Date Last Accessed | For non-emails (produced in MM/DD/YYY format) | X |
| Time Last Accessed | For non-emails (produced as HH:MM AM/PM | X |
| Last Modified By | Person who last modified a document | X |

2913571.3