## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRENE CHABAK, ARMANDO CARRASCO, RANDY POLK, KELLY WILSON, THOMAS BOOTH HARRIS, SCOTT WEISCOPE, LAVINA HENDERSON, JEREMY HENDERSON, and RAYCINE SOMMERS, *individually and on behalf of all others similarly situated*, | Case No. 7:22-cv-9341<br><br>Hon. Philip M. Halpern |
| Plaintiffs, | |
| v. | |
| SOMNIA INC., ANESTHESIA SERVICES OF SAN JOAQUIN P.C., PALM SPRINGS ANESTHESIA SERVICES P.C., RESOURCE ANESTHESIOLOGY ASSOCIATES OF IL P.C., RESOURCE ANESTHESIOLOGY ASSOCIATION OF NM INC., and ANESTHESIA ASSOCIATES OF EL PASO, P.A., | |
| Defendants. | |

## PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that Plaintiffs Irene Chabak, Armando Carrasco, Kelly Wilson, Thomas Booth Harris, Scott Weiscope, Lavina Henderson, Jeremy Henderson, and Raycine Sommers (collectively, "Plaintiffs")[1] hereby move the Court, before the Honorable Philip Halpern, at the United States District Courthouse for the Southern District of New York, located at 300 Quarropas St., White Plains, New York 10601, at a date and time to be determined

---

[1] Plaintiffs' Counsel have been unable to contact Plaintiff Randy Polk despite repeated attempts and will be moving accordingly.

by the Court, for an order pursuant to FED. R. CIV. P. 23 granting Plaintiffs' Unopposed Motion

for Preliminary Approval of Class Action Settlement. Plaintiffs respectfully request that the

Court do the following:

      1.     Grant preliminary approval of the Parties' proposed Settlement Agreement and

Release (the "Agreement");[2]

      2.     Find that it is likely to certify, for settlement purposes, the Class and California

Subclass, pursuant to FED. R. CIV. P. 23(a), (b)(3), and (e);

      3.     Appoint Plaintiffs as Class Representatives representing the Class and, as to

Plaintiffs Raycine Sommers, Kelly Wilson, and Thomas Booth Harris as Subclass

Representatives for the California Subclass;

      4.     Appoint Lieff Cabraser Heimann & Bernstein, LLP and Finkelstein, Blankinship,

Frei-Pearson & Garber, LLP as Class Counsel for the Class and California Subclass;

      5.     Approve the Parties' proposed Notice Plan, including the proposed forms of

notice, and direct that notice be disseminated pursuant to such Notice Plan and FED. R. CIV. P.

23(c) and (e)(1);

      6.     Appoint Angeion Group, LLC ("Angeion") as Claims Administrator for the

Settlement and direct it to carry out the duties and responsibilities of the Claims Administrator

specified in the Agreement;

      7.     Set deadlines for Class Members and California Subclass Members to request

exclusion from the Settlement, object to the Settlement, or submit claims for payment;

      8.     Stay all non-Settlement-related proceedings in this lawsuit pending final approval

of the Settlement; and

---

[2] The Agreement is attached. All capitalized terms are defined in the Agreement.

9.      Schedule a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement pursuant to FED. R. CIV. P. 23(e)(2).

This motion is supported by the accompanying *Memorandum of Law* and the Joint Declaration of Jason L. Lichtman and Todd S. Garber filed herewith, the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

As discussed in the accompanying *Memorandum of Law*, the requested relief is appropriate because the Settlement satisfies the standards for preliminary approval and for direction of class notice under FED. R. CIV. P. 23(c) and (e)(1).

Dated:  July 1, 2024                    Respectfully submitted,

By: */s/ Jason L. Lichtman*                By: */s/ Todd S. Garber*
    Jason L. Lichtman                         Todd S. Garber
    Sean A. Petterson                         Andrew C. White
    Margaret M. Becko                         **FINKELSTEIN, BLANKINSHIP,**
    **LIEFF CABRASER HEIMANN**                **FREI-PEARSON & GARBER, LLP**
    **& BERNSTEIN, LLP**                      One North Broadway, Suite 900
    250 Hudson Street, 8th Floor              White Plains, NY 10601
    New York, New York 10013                  914.298.3283
    212.355.9500                              Email:  tgarber@fbfglaw.com
    Email:  jlichtman@lchb.com                        awhite@fbfglaw.com
            spetterson@lchb.com
            mbecko@lchb.com

*Attorneys for Plaintiffs and Proposed Class Counsel*

3

se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRENE CHABAK, ARMANDO CARRASCO, RANDY POLK, KELLY WILSON, THOMAS BOOTH HARRIS, SCOTT WEISCOPE, LAVINA HENDERSON, JEREMY HENDERSON, and RAYCINE SOMMERS, *individually and on behalf of all others similarly situated*, | Case No. 7:22-cv-9341  Hon. Philip M. Halpern |
| Plaintiffs, | |
| v. | |
| SOMNIA INC., ANESTHESIA SERVICES OF SAN JOAQUIN P.C., PALM SPRINGS ANESTHESIA SERVICES P.C., RESOURCE ANESTHESIOLOGY ASSOCIATES OF IL P.C., RESOURCE ANESTHESIOLOGY ASSOCIATION OF NM INC., and ANESTHESIA ASSOCIATES OF EL PASO, P.A., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

    A.    Initial Discovery ...................................................................................... 2

    B.    Settlement Negotiations ........................................................................... 3

III.  THE SETTLEMENT TERMS .......................................................................... 3

    A.    The Settlement Class ................................................................................ 3

    B.    Monetary Settlement Payment ................................................................. 4

    C.    The Class Notice Plan .............................................................................. 5

    D.    Settlement Administration ........................................................................ 5

    E.    Opportunity to Opt-Out and Object, and Appear at Hearing .................. 6

    F.    Scope of Release ...................................................................................... 6

    G.    Attorneys' Fees and Expenses and Plaintiffs' Service Awards ............... 6

IV.   LEGAL STANDARD ....................................................................................... 6

V.    ARGUMENT ..................................................................................................... 8

    A.    The proposed class action should be preliminarily approved. ................ 8

        1.    Plaintiffs and their counsel represented the Class zealously. ................... 8

        2.    The Settlement is the product of arm's-length negotiations by experienced counsel and is informed by targeted discovery. ................... 9

        3.    The Settlement represents a strong result for the Class, particularly given the substantial risk and challenges the Class faces. ...................... 10

        4.    The effectiveness of any proposed method of distributing relief to the Class, including the method of processing claims. ........................... 12

        5.    The terms of any proposed award of attorney's fees, including timing of payment. ................................................................................. 14

        6.    There are no undisclosed side agreements. .............................................. 14

        7.    The Settlement treats Class Members and California Subclass Members equitably. ................................................................................. 14

        8.    The remaining *Grinnell* factors support preliminary approval. .............. 15

    B.    Plaintiffs ask the Court to find that it will likely certify the Class and Subclass ................................................................................................. 17

        1.    The requirements of FED. R. CIV. P. 23(a) are satisfied. ......................... 18

            a.    Numerosity (FED. R. CIV. P. 23(a)(1)) ........................................ 18

            b.    Commonality (FED. R. CIV. P. 23(a)(2)) ..................................... 18

i

# TABLE OF CONTENTS
## (continued)

Page

  c. Typicality (FED. R. CIV. P. 23(a)(3))............................................ 19

  d. Adequacy of Representation (FED. R. CIV. P. 23(a)(4)) .............. 19

 2. The requirements of FED. R. CIV. P. 23(b)(3) are satisfied. .................... 20

  a. Predominance............................................................................. 20

  b. Superiority................................................................................... 21

 3. The Class and California Subclass are ascertainable............................. 21

C. The proposed Notice Plan complies with Rule 23 and due process. .................. 22

VI. SCHEDULING AND FINAL FAIRNESS HEARING.................................................. 23

VII. CONCLUSION............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012).................................................................................................8

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................21, 23

*Barrows v. Becerra*,
24 F.4th 116 (2d Cir. 2022) ...................................................................................19

*Basso v. New York Univ.*,
363 F. Supp. 3d 413 (S.D.N.Y. 2019)....................................................................20

*Beasley v. TTEC Servs. Corp.*,
2024 WL 710411 (D. Colo. Feb. 21, 2024) ..........................................................15

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020).....................................................................................17

*Bohnak v. Marsh & McLennan Cos., Inc.*,
79 F.4th 276 (2d Cir. 2023) .....................................................................................12

*In re Capital One Consumer Data Sec. Breach Litig.*,
2022 WL 18107626 (E.D. Va. Sept. 13, 2022)......................................................18

*Chang v. Philips Bryant Park LLC*,
2019 WL 8105999 (S.D.N.Y. Oct. 23, 2019) ........................................................11

*Chavarria v. New York Airport Service, LLC*,
875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...................................................................17

*Consol. Rail Corp. v. Hyde Park*,
47 F.3d 473 (2d Cir. 1995).......................................................................................18

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007).........................................................................................8

*D'Angelo v. Hunter Bus. Sch., Inc.*,
2023 WL 4838156 (E.D.N.Y. July 28, 2023) ........................................................10

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ........................................... *passim*

*Ebin v. Kangadis Food, Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................19

*Fero v. Excellus Health Plan, Inc.*,
502 F. Supp. 3d 724 (W.D.N.Y. 2020) ..................................................................18

*Flores v. Anjost Corp.*,
2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ..........................................................16

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Flores v. CGI Inc.,*
2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) .................................................................7, 8

*Floyd v. City of New York,*
283 F.R.D. 153 (S.D.N.Y. 2012) ............................................................................................19

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
2012 WL 5305694 (S.D.N.Y. Oct. 4, 2012) .........................................................................16

*In re GSE Bonds Antitrust Litig.,*
414 F. Supp. 3d 686 (S.D.N.Y. 2019)...............................................................................7, 10

*Guippone v. BH S&B Holdings LLC,*
2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016)................................................................12, 16

*Maley v. Del Global Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................................17

*McReynolds v. Richards-Cantave,*
588 F.3d 790 (2d. Cir. 2009)....................................................................................................7

*In re Michael Milken & Assocs. Securities Litig.,*
150 F.R.D. 57 (S.D.N.Y. 1993) .............................................................................................17

*Moses v. New York Times Co.,*
79 F.4th 235 (2d Cir. 2023) ........................................................................................7, 8, 15

*In re Namenda Direct Purchaser Antitrust Litig.,*
462 F. Supp. 3d 307 (S.D.N.Y. 2020)...............................................................................10, 15

*Newman v. Stein,*
464 F.2d 689 (2d Cir.1972)....................................................................................................17

*In re Petrobras Sec. Litig.,*
862 F.3d 250 (2d Cir. 2017)....................................................................................................22

*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*
2019 WL 3410382 (D. Ore. July 29, 2019) .............................................................................5

*Fort Worth Empls.' Ret. Fund v. J.P. Morgan Chase & Co.,*
301 F.R.D. 116 (S.D.N.Y. 2014) ...........................................................................................18

*Reyes v. Summit Health Mgmt., LLC,*
2024 WL 472841 (S.D.N.Y. Feb. 6, 2024)........................................................8, 14, 15, 16

*In re Solara Med. Supplies Data Breach Litig.,*
2022 WL 1174102 (S.D. Cal. Apr. 20, 2022)........................................................................18

*Soler v. Fresh Direct, LLC,*
2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ............................................................. *passim*

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC,*
2023 WL 3749996 (S.D.N.Y. June 1, 2023) .........................................................................16

### TABLE OF AUTHORITIES
#### (continued)

**Page**

*Sykes v. Mel S. Harris & Assocs., LLC,*
 780 F.3d 70 (2d Cir. 2015)....................................................................18, 19, 20

*Tyson Foods, Inc. v. Bouaphakeo,*
 136 S. Ct. 1036 (2016) ......................................................................................21

*In re U.S. Foodservice Inc. Pricing Litig.,*
 729 F.3d 108 (2d Cir. 2013) ..............................................................................21

*UFCW Loc. 1776 v. Eli Lilly & Co.,*
 620 F.3d 121 (2d Cir. 2010) ..............................................................................21

*Vega v. Semple,*
 2024 WL 2941657 (D. Conn. June 11, 2024)....................................................22

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011) ...........................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
 396 F.3d 96 (2d Cir. 2005) ................................................................................17

*In re Warfarin Sodium Antitrust Litig.,*
 391 F.3d 516 (3d Cir. 2004) ..............................................................................12

*Zivkovic v. Laura Christy LLC,*
 329 F.R.D. 61 (S.D.N.Y. 2018) .........................................................................19

**Statutes**

Cal. Civ. Code § 56.36(b)(1) ..................................................................................9, 13

**Federal Rules**

FED. R. CIV. P. 23 ...............................................................................................2, 18, 22

FED. R. CIV. P. 23(a) .....................................................................................2, 8, 18, 20

FED. R. CIV. P. 23(a)(1) ..........................................................................................18

FED. R. CIV. P. 23(a)(2) ..........................................................................................18

FED. R. CIV. P. 23(a)(3) ..........................................................................................19

FED. R. CIV. P. 23(a)(4) ..........................................................................................19

FED. R. CIV. P. 23(b) ..........................................................................................8, 18

FED. R. CIV. P. 23(b)(3) ..................................................................................2, 20, 21

FED. R. CIV. P. 23(c) ........................................................................................2, 3, 24

FED. R. CIV. P. 23(c)(2)(B) ................................................................................22, 23

FED. R. CIV. P. 23(c)(3) ..........................................................................................23

FED. R. CIV. P. 23(e) ......................................................................................2, 7, 11

FED. R. CIV. P. 23(e)(1).................................................................................2, 3, 22, 24

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2) ........................................................................................ *passim*

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2)(C) ...............................................................................11

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2)(C)(i) ......................................................................11, 16

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2)(C)(ii) ..........................................................................13

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2)(C)(iii) .........................................................................14

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2)(D) ...............................................................................15

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(3) .................................................................................7, 15

Fᴇᴅ. R. Cɪᴠ. P. 23(f) ..........................................................................................12

Fᴇᴅ. R. Cɪᴠ. P. 23(h) .........................................................................................14

## I.    <u>INTRODUCTION</u>

After nearly two years of litigation, three days of mediation with two different mediators, and thorough investigation into (and confirmation of) Defendants' limited ability to pay a future judgment, Plaintiffs respectfully move the Court for preliminary approval of the Settlement reached with Somnia, Inc. and the other Defendants ("the P.C. Defendants") in this matter.[3] This Settlement fully resolves this Action, which alleges that Defendants' cybersecurity failures allowed threat actors to abscond with Plaintiffs' and Class Members' Personal Information as a result of the data breach that Somnia experienced on or about July 11, 2022 (the "Security Incident").

The Settlement requires Defendants to pay $2,425,000 into a common fund (the "Settlement Fund"), from which Class Members who file timely and valid Claim Forms will receive: (1) a Default Settlement Payment; and (2) cash payments for any documented Out-of-Pocket Losses. In no event will any of the Settlement Fund revert to Defendants. Defendants also warrant that Plaintiffs and Class Counsel were a catalyst in causing Defendants to invest over $750,000 in upgraded security to significantly reduce the risk of further security incidents. This is an outstanding settlement by any measure: above the average recovery per class members in similar data breach settlements and very likely a better result than Plaintiffs could have achieved at trial because Defendants would have depleted their limited resources on the cost of defense.

Plaintiffs respectfully seek preliminary approval of the Settlement, a holding that the Court will likely certify the Class and California Subclass, and approval to send notice to the Class and California Subclass describing the Settlement and an opportunity to claim, opt-out, object, or otherwise be heard. The Settlement satisfies all criteria for preliminary approval.

---

[3] Any undefined capitalized terms have the meaning attributed to them in the Parties' Class Action Settlement Agreement and Release ("Agmt.").

## II.    BACKGROUND

On October 31, 2022, Plaintiff Irene Chabak filed a putative class action in this Court against Somnia. Dkt. 1. After the Court appointed proposed Class Counsel as interim co-lead counsel and consolidated six other actions against Somnia, Plaintiffs filed a Consolidated Amended Complaint on March 1, 2023 generally alleging that Defendants' insufficient cybersecurity practices caused the Security Incident and brought claims under: (1) negligence; (2) negligence per se; (3) breach of confidence; (4) unjust enrichment; (5) the California Confidentiality of Medical Information Act ("CMIA"); (6) the California Unfair Competition Law; (7) the California Consumer Legal Remedies Act; and (8) the California Consumer Records Act. Dkt. 28.

On June 14, 2023, the Court held a pre-motion telephonic conference regarding Defendants' motion to dismiss. On June 15, 2023, the Parties stipulated to the voluntary dismissal of Plaintiffs' California Unfair Competition Law and California Consumer Records Act claims. Dkt. 49. On September 22, 2023, the Parties completed briefing Defendants' motion to dismiss. Dkts. 53-56.

### A.    Initial Discovery

On June 27, 2024, Plaintiffs served thirteen requests for production and seven interrogatories on the P.C. Defendants and ten requests for production and eleven interrogatories on Somnia. *See* Joint Declaration of Jason Lichtman and Todd Garber, ¶ 30 ("Joint Decl."). From August 2023 to January 2024, the Parties met and conferred about numerous discovery issues, including the production of targeted initial documents. *Id.* ¶¶ 30-34. In total, Defendants made three document productions spanning more than 5,000 pages, including key contracts between Defendants, cybersecurity risk assessments from each Defendant (to the extent they existed), and documents that Somnia provided to regulators that explained the Security Incident

in detail. *Id.* ¶ 33. Plaintiffs also served a second set of interrogatories on each Defendant on November 1, 2023. *Id.* ¶ 34.

Separately, on November 8, 2023, Somnia served requests for production and interrogatories on each Plaintiff, which each answered on December 8, 2023. *Id.* ¶ 35. Four Plaintiffs produced documents responsive to Somnia's requests for production. *Id.* ¶ 36.

**B.    Settlement Negotiations**

On January 23, 2024, the Parties filed a joint letter to stay proceedings pending mediation. Dkt. 60. On April 16, 2024, the Parties conducted a full-day mediation with Mark LeHocky of ADR Services Inc. *Id.* ¶ 40. After that mediation was unsuccessful, the Parties promptly engaged a second mediator, Jill Sperber of Judicate West, and conducted a full-day mediation on May 30, 2024. *Id.* ¶ 41. After initial progress was made during that mediation, the Parties agreed to another mediation on June 3, 2024 with Ms. Sperber. *Id.* ¶ 42. During those mediations, one area of focus was Defendants' ability to pay, and Plaintiffs were provided with a tutorial on how Defendants' revenue cycle works and how much Defendants could pay beyond their wasting insurance policy (facts which were verified in a declaration provided thereafter by Somnia's Chief Financial Officer). *Id.* ¶ 43. After continued discussions and negotiations with Ms. Sperber and directly between the Parties, on June 18, 2024, the Parties accepted a mediator's proposal. *Id.* ¶ 45. The Parties thereafter drafted, negotiated, and executed the Agreement on July 17 and 18, 2024. *Id.* ¶ 46.

**III.    THE SETTLEMENT TERMS**

**A.    The Settlement Class**

The "Class" means "all natural persons residing in the United States whose Personal Information was compromised in the Security Incident." Agmt. § 2.14. The "California Subclass" means "natural persons residing in California whose Personal Information was

compromised in the Security Incident." *Id.* § 2.06.

    **B.**    <u>**Monetary Settlement Payment**</u>

    The Settlement requires Defendants to pay an all-cash non-reversionary sum of $2,425,000 (the "Settlement Fund"). *Id.* § 4.01. From the Settlement Fund, Class Members and California Subclass Members who file a valid and timely claim for Out-of-Pocket Losses or a Default Settlement Payment will receive a Cash Award. *Id.* §§ 2.09, 5. Cash Awards will be distributed, at the Class Member's election, by check or secure electronic payment. *Id*. §§ 10.05-06.

    Cash Awards shall be distributed as follows. All Class Members and California Subclass Members are entitled to make a claim for Out-of-Pocket Losses subject to an overall claims cap of $2,500. *Id*. § 5.02. Out-of-Pocket Losses must be plausibly traceable to the Security Incident and supported by Reasonable Documentation. *Id.* Out-of-Pocket Losses include time spent for up to 20 hours at a rate of $20.00 per hour. *Id.* § 5.02(b)(5). Class Members and California Subclass Members who submit a valid claim for Out-of-Pocket Losses are also automatically entitled to a Default Settlement Payment. *Id.* §§ 5.03(a), 10.02(b)(3). If the aggregate value of claims for Out-of-Pocket Losses exceeds 50% of the Net Settlement Fund, such claims shall be reduced *pro rata* because no less than 50% of the Net Settlement Fund is reserved for Default Settlement Payments. *Id.* § 5.02(d).

    All Class Members and California Subclass Members are also entitled to submit a valid and timely claim for a Default Settlement Payment, which does not require any Reasonable Documentation. *Id.* § 5.03. California Subclass Members are entitled to three "shares" and Class Members are entitled to one "share" as part of the *pro rata* split of the Default Settlement Payment. *Id.* This difference accounts for the fact that California Subclass Members are releasing their CMIA claims, which provide for statutory damages. Providing for additional damages for

releasing CMIA claims is consistent with other data breach settlements. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *22 (D. Or. July 29, 2019) (granting preliminary approval of settlement providing for additional funds for Californians bringing CMIA claim).

Finally, the Settlement acknowledges that "Plaintiffs and Class Counsel were a catalyst in causing Defendants to undertake remedial measures they will or have already undertaken. Defendants have invested over $750,000 in upgraded security in an effort to significantly reduce the risk of further security incidents[.]" Agmt. § 5.05.

### C.    The Class Notice Plan

The Settlement requires a comprehensive Notice Plan to the Class under which the Parties' chosen Claims Administrator, Angeion Group, LLC ("Angeion"), will directly notify— via mail or email notice—all Class Members of the Settlement. *Id.* § 9.

Angeion will also post the Long Form Notice to the public on the Settlement Website, www.somniasettlement.com, which it will create and maintain. *Id.* § 9.04. The Settlement Website will contain the Notice documents, Claim Forms that can be completed on the website, the Settlement Agreement and its exhibits, and key case filings, including Class Counsel's Motion for Attorneys' Fees when it is filed. *Id.*

### D.    Settlement Administration

Angeion shall receive, review, and approve or reject Claim Forms to determine whether they are eligible for payment and to determine whether Claims for Out-of-Pocket Losses are valid and plausibly traceable to the Security Incident. *Id.* 10.02(b). Angeion shall also distribute the Settlement Fund for both Out-of-Pocket Losses and Default Settlement Payments and distribute un-cashed payments on a *pro rata* basis to Class Members who cashed Settlement checks if there is more than $2.00 per qualifying claimant. *Id.* § 10.06. If any additional

distributions are not feasible or practical or if there are funds remaining in the Net Settlement Fund, the remaining balance will be distributed to the Public Justice Foundation or another suitable non-profit. *Id.*

### E. Opportunity to Opt-Out and Object, and Appear at Hearing

Class Members will be permitted to exclude themselves from (i.e., opt-out of) the Settlement or object to the Settlement no later than sixty (60) days following the Settlement Notice Date. *Id.* §§ 2.33, 2.34.

### F. Scope of Release

Class Members are releasing Defendants and related anesthesiologist providers under common ownership of Defendants from any and all claims that could have been brought in the First Amended Complaint arising from or related to the Security Incident. *Id.* §§ 2.42, 14.

### G. Attorneys' Fees and Expenses and Plaintiffs' Service Awards

Class Counsel will seek approval by the Court of an award of attorneys' fees not exceeding $1,000,000 and reimbursement of reasonable costs and expenses, to be paid from the Settlement Fund. *Id.* § 6.01. Plaintiffs will also request service awards of up to $1,000 to each Plaintiff in recognition of the significant time and effort they personally invested in this litigation, including responding to discovery requests and consulting with Class Counsel. *Id.* § 6.02; Joint Decl. ¶¶ 55-57. Negotiations on these terms were only commenced after the Parties reached agreement on all other material terms in the Agreement. Agmt. § 6.01(c). Defendants retain the right to challenge any fees, costs, or service award request, should they wish to do so, and any un-awarded attorneys' fees, costs, or service award will be paid directly to Class Members. *Id.*

## IV. LEGAL STANDARD

Even following the 2018 amendments to the Federal Rules, "[i]n the Second Circuit,

'there is strong judicial policy in favor of settlements, particularly in the class action context."
*Flores v. CGI Inc.*, 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d. Cir. 2009)). Pursuant to Rule 23(e), a class action settlement must be approved by the presiding court before it can become effective. Court approval proceeds in two stages: (1) preliminary approval of the proposed settlement and direction of notice to the class; and (2) a final approval hearing, at which the Court considers argument concerning the fairness, adequacy, and reasonableness of the proposed settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

The 2018 revisions to Rule 23(e) focus on four "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal." *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting FED. R. CIV. P. 23(e)(2) advisory committee's notes to 2018 amendments). Those include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>   i.   the costs, risks, and delay of trial and appeal;
>   ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   iii. the terms of any proposed award of attorney's fees, including timing of payment; and
>   iv.  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Additionally, the Second Circuit recently held that the revised Rule 23(e)(2) factors do not displace this Circuit's traditional *Grinnell* factors, which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Moses*, 79 F.4th at 242 n.3 (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

Finally, the "district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the relevant subsection of Rule 23(b)." *Flores*, 2022 WL 13804077, at *2 (citing *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012)).

## V.    ARGUMENT

### A.    The proposed class action should be preliminarily approved.

#### 1.    Plaintiffs and their counsel represented the Class zealously.

The first factor under Rule 23(e)(2) is whether counsel and the proposed class representatives are adequate. This "typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Reyes v. Summit Health Mgmt., LLC*, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). Here, Plaintiffs and Class Counsel prosecuted this Action on behalf of the Class and California Subclass vigorously for nearly two years, with no guarantee of recovery. As summarized above and further detailed in their Joint Declaration, Class Counsel thoroughly investigated the factual and legal issues involved, conducted targeted and key discovery, and, after three day-long mediations, learned that

8

Defendants could not satisfy a judgment against them and thus obtained the maximum amount that they could for the Class and Subclass. Joint Decl. ¶¶ 18-47.

Class Counsel drafted an amended complaint of which the Court said, in its June 2023 pre-motion conference, "frankly, that some of [it] is going to survive." June 14, 2023 Hr'g Tr. at 8:19-20. This carefully pled complaint included a CMIA claim that would entitle the more than 100,000 California Subclass Members to the potential for statutory damages of $1,000 per Subclass Member. Cal. Civ. Code § 56.36(b)(1). Further, it relied on the work of a leading consulting expert to search for and find evidence of Plaintiffs' information for sale on the dark web, a key consideration for establishing Article III standing. Joint Decl. ¶ 22. During the same pre-motion conference, the Court stated that it would not stay discovery and Class Counsel thereafter drafted narrow and targeted requests for production and interrogatories to obtain, at the outset, the most important documents in the case. *Id.* ¶ 30.

Class Counsel obtained these key documents and quickly reviewed them to understand their implications for liability. *Id.* ¶ 33. Further, Class Counsel extensively met and conferred to press Defendants to produce additional documents and to withdraw their objections to certain discovery. *Id.* ¶ 32.

Likewise, Plaintiffs were actively engaged and responded to discovery requests and interrogatories, produced responsive documents, and regularly communicated with Class Counsel up to and including evaluating and approving the Settlement. *Id.* ¶¶ 35-36, 55-57. Plaintiffs' interests as Class and Subclass representatives are aligned with those of other Class Members who also had their information compromised in the Security Incident.

## 2. The Settlement is the product of arm's-length negotiations by experienced counsel and is informed by targeted discovery.

The second Rule 23(e)(2) factor is whether the proposal was negotiated at arm's length

because "[a] strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020). Further, "a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Soler v. Fresh Direct, LLC*, 2023 WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023) (quoting *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693).

This factor weighs in favor of approval. The Parties engaged in three mediations before two experienced and respected mediators. On April 16, 2024, the Parties mediated the Action before Mark LeHocky of ADR Services, Inc. and on May 30, 2024 and June 3, 2024, they mediated before Jill Sperber of Judicate West. Joint Decl. ¶¶ 40-45. The Parties also submitted detailed mediation statements in advance of the April and May 2024 mediations. *Id.* ¶¶ 40-41. On June 18, 2024, after further negotiations and discussions around specific points related to Defendants' finances, the Parties each accepted a mediator's proposal. *Id.* ¶ 45. Prior to and during the mediation process, the Parties engaged in meaningful initial discovery, which "put the parties in a unique position to weigh the strengths and weaknesses of the case and thus addressed whether settlement was the better option as opposed to proceeding to trial." *D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 WL 4838156, at *7 (E.D.N.Y. July 28, 2023). Class Counsel were thus well-situated to evaluate the relative strengths and weaknesses of the Parties' positions, particularly the ability to obtain a complete recovery at trial, and to negotiate a fair, reasonable, and adequate settlement.

### 3.    The Settlement represents a strong result for the Class, particularly given the substantial risk and challenges the Class faces.

The third Rule 23(e) factor requires a court to examine whether relief is adequate, taking into account "the costs, risks, and delay of trial and appeal." FED. R. CIV. P. 23(e)(2)(C)(i). This

overlaps with *Grinnell* factors 1 and 3-6, "which the Court shall consider alongside the Rule 23(e)(2)(C) factors." *Soler*, 2023 WL 2492977, at \*3. The Settlement represents an excellent result, including Plaintiffs obtaining all of Defendants' wasting insurance policy and payments from Defendants directly. Joint Decl. ¶ 43. Here, the cost of risks and delay was particularly acute given that Defendants' overwhelming source of funds to pay for a settlement and/or judgment came from a wasting insurance policy. *Id.* By settling now, Plaintiffs were able to obtain the remaining insurance policy.

Defendants will pay $2.425 million now, none of which will revert to Defendants. This is an excellent result for Class Members, providing them with real, certain monetary relief without having to wait for years for this Action to conclude or endure the risks that Defendants prevail or that Plaintiffs prevail and Defendants cannot pay any judgment. The strength of this relief is particularly clear when considered in light of the *Grinnell* factors that overlap with Rule 23(e)(2)(C)(i):

- *Grinnell Factor 1*, **The Complexity, Expense, and Likely Duration of the Litigation**: In reaching their agreement, the Parties considered the uncertainty and risks in litigation and the costs each party will incur if litigation continues, and the Parties both concluded that it is in their mutual interest to resolve the litigation. *See Chang v. Philips Bryant Park LLC*, 2019 WL 8105999, at \*7 (S.D.N.Y. Oct. 23, 2019) (first *Grinnell* factor favors approval where "parties have exchanged some documentary discovery, but further litigation would include depositions, discovery motion practice, expert discovery, class certification proceedings, and summary judgment motion practice, all of which would impose a significant cost on the parties"). Data breach cases such as this one tend to be factually complex, requiring protracted and costly litigation. They also typically face significant legal uncertainties, including pleading and pretrial motions, such as a motion to dismiss, related appeals, obtaining class certification, and bringing and/or opposing a summary judgment motion. A judgment for either Party would likely be appealed, extending the costs and duration of the litigation.

- *Grinnell Factor 3*, **The Stage of the Proceedings and the Amount of Discovery Completed**: While discovery was still in its early stages, it was nevertheless targeted and provided Plaintiffs with a robust factual

11

understanding of the Security Incident and Defendants' prior cybersecurity risk assessments. Joint Decl. ¶ 33. Plaintiffs also bolstered their understanding of this discovery by conferring with consulting cybersecurity experts who explained the import of highly technical documents detailing the state of Somnia's cybersecurity. *Id.* Accordingly, Plaintiffs "had an adequate appreciation of the merits of the case before negotiating." *Soler*, 2023 WL 2492977, at *4 (discussing third *Grinnell* factor and quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).

- ***Grinnell Factor 4*, The Risk of Establishing Liability**: While Plaintiffs believe their claims are meritorious, they also recognize the significant risks, challenges, and substantial complexities of continued litigation. Defendants' motion to dismiss was pending prior to Settlement and dismissal of some of Plaintiffs' claims, in particular the CMIA claim, would have significantly reduced the potential size of a judgment.

- ***Grinnell Factor 5*, The Risk of Establishing Damages**: As detailed above, the greatest risk Plaintiffs faced was that any recovery would be a pyrrhic victory as Defendants would be unable to fund any judgment and would instead file for bankruptcy. Plaintiffs respectfully believe that this factor alone would justify the settlement as fair, adequate, and reasonable: settlement relief is likely *higher* than what Plaintiffs could actually have recovered following trial.

- ***Grinnell Factor 6*, The Risk of Maintaining Class Certification through Trial**: Plaintiffs believe that this is a particularly straightforward case for class certification, but no plaintiff can ever be assured of maintaining class certification through trial. *See Guippone v. BH S&B Holdings LLC*, 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016) ("The risk of maintaining a class through trial is present in any class action."). Data breach litigation is in its relative infancy as a body of law, as demonstrated by the fact that the Second Circuit, in the middle of the Parties' motion to dismiss briefing, issued a major Article III standing decision in *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276 (2d Cir. 2023). And Plaintiffs would have still have had to withstand a likely Rule 23(f) appeal and an appeal of any trial verdict.

Cumulatively, these factors demonstrate that the Settlement represents an excellent result for the Class and California Subclass.

### 4. <u>The effectiveness of any proposed method of distributing relief to the Class, including the method of processing claims.</u>

Rule 23(e)(2)(C)(ii) requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

12

claims." FED. R. CIV. P. 23(e)(2)(C)(ii). The proposed method of distributing relief is fair,

reasonable, and straightforward. All Class Members who provide Reasonable Documentation for

their Out-of-Pocket losses will be able to obtain a reimbursement of their costs up to $2,500 and

payment of $20/hour for the time expended in addressing their Out-of-Pocket Losses.[4] Agmt. §

5.02. The Claims Administrator will be responsible for determining whether a valid claim has

been made for Out-of-Pocket Losses to ensure that only those Class Members who suffered the

most and most easily quantifiable harm will be entitled to a recovery. *Id.* § 10.02(b)(1).

The proposed method of distributing relief also accounts for the fact that many Class

Members may not have Reasonable Documentation of their Out-of-Pocket Losses or may be

unaware that losses they suffered can be attributed to the Security Incident. Accordingly, the

Settlement specifically reserves at least 50% of the Net Settlement Fund to claimants seeking a

Default Settlement Payment. *Id*. § 5.02(d). The Default Settlement Payments will also be

available, automatically, to all claimants who submit an Out-of-Pocket Loss. *Id.* § 5.03(a).

Finally, the proposed method differentiates between Class Members and California Subclass

Members because only California Subclass Members had the ability to obtain statutory damages

under the CMIA. Cal. Civ. Code § 56.36(b)(1). Thus, California Subclass Members are entitled

to three *pro rata* shares of the Default Settlement Payment as compared to one for Class

Members. Agmt. §§ 5.03(a)(i)-(ii).

Finally, the Claim Form, attached to the Settlement Agreement as Exhibit E, provides

clear instructions about what information is required to submit a claim for an Out-of-Pocket Loss

and/or Default Settlement Payment. Agmt. Ex. E. Class Members will also be given an

---

[4] Claimants who submit Reasonable Documentation of their Out-of-Pocket Losses will also be able to obtain up to five (5) hours of self-certified time at a rate of $20/hour without having to submit Reasonable Documentation specific to the lost time. Agmt. § 5.02(c).

opportunity to cure any deficiencies in their claim for an Out-of-Pocket Loss. *Id.* § 10.03. And the Settlement as a whole will be administered by an experienced Claims Administrator.

### 5. The terms of any proposed award of attorney's fees, including timing of payment.

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(iii). Here, the Agreement provides that Class Counsel will seek attorneys' fees in an amount not to exceed $1 million. Agmt. § 6.01. In light of the value of the cash portion of the Settlement Fund ($2,425,000) and the value of the Business Practices Changes for which Plaintiffs were a "catalyst" ($750,000), attorneys' fees of $1 million would be 31.5% of the total value of the Settlement ($1,000,000/$3,175,000). This percentage—roughly one-third—is consistent with the normal range awarded in this Circuit. *See, e.g., Reyes,* 2024 WL 472841, at *4 (collecting cases and noting that "[c]ourts in this District have approved fees as high as 33.5% from comparable class settlement funds, finding that they are well within the applicable range of reasonable percentage fund awards") (quotation omitted).

Class Counsel will file their motion for attorneys' fees and expenses in advance of the deadline for Class Members to object or opt-out, and it will be available on the Settlement Website after it is filed. Agmt. § 9.04. Class Members will thus have an opportunity to comment or object under FED. R. CIV. P. 23(h).

### 6. There are no undisclosed side agreements.

Rule 23(e)(3) requires the Parties to "file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). Here, there are none.

### 7. The Settlement treats Class Members and California Subclass Members equitably.

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats

14

class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). Here, as detailed above, *see supra* Section V.A.3, the Settlement accounts for the relative harms suffered by all Class Members and those individuals with more valuable claims under the CMIA. *See, e.g.*, *In re Namenda*, 462 F. Supp. 3d at 316 (approving plan of allocation providing for damages based on amount of relative damages sustained by each class member with differentiation between purchasers or certain brands); *Reyes*, 2024 WL 472841, at *5 (approving settlement with minimum payment along with *pro rata* sum "based on the amounts of the charges refunded to them by [defendant]"); *Beasley v. TTEC Servs. Corp.*, 2024 WL 710411, at *3 (D. Colo. Feb. 21, 2024) (finally approving settlement providing additional $100 award to California subclass members "in recognition of their [CMIA] claim"). Plaintiffs note that counsel who have only California plaintiffs—Lieff Cabraser Heimann & Bernstein, LLP and Wolf Haldenstein Adler Freeman & Herz, LLP—as well as counsel who have only non-California plaintiffs— Finkelstein, Blankinship, Frei-Pearson, & Garber, LLP, Morgan & Morgan, PA, and Milberg Coleman Bryson Phillips Grossman, PLLC—support this settlement.

Under this Rule, Courts also consider service awards. *Moses*, 79 F.4th at 245. Courts in this Circuit consider whether the incentive awards are "excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* The requested service awards of $1,000 per Plaintiff is "within the range of service awards regularly approved by courts in this District." *Reyes*, 2024 WL 472841, at *6, n.5 (noting that courts regularly approve service awards ranging from $1,000 to $10,000).

### 8.    The remaining *Grinnell* factors support preliminary approval.

The *Grinnell* factors not expressly assessed under Rule 23(e)(2)(c)(i) include: (2) "the reaction of the class to the settlement"; (7) "the ability of defendants to withstand a greater judgment"; (8) "the range of reasonableness of the settlement fund in light of the best possible

recovery"; and (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Reyes*, 2024 WL 472841, at *6. Each of these factors supports approval.

**Factor 2**. Plaintiffs' approval of the Settlement "is probative of the Class's reaction at this time because notice has not yet been issued." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023).

**Factor 7**. Defendants' inability to withstand a greater judgment was the single most determinative factor for settling. Somnia's Chief Financial Officer and Defendants' Counsel provided a tutorial on Defendants' finances which revealed that Defendants are thinly capitalized entities with a wasting insurance policy who could not have satisfied a judgment, particularly with respect to statutory damages to the 100,000 plus California Subclass Members who alleged statutory damages of $1,000 per Subclass Member under the CMIA. Joint Decl. ¶ 43; *Guippone*, 2016 WL 5811888, at *7 (noting that this factor favors final approval where sole remaining defendant "has no assets").[5]

**Factors 8 & 9**. The eighth and ninth *Grinnell* factors support approval as $2,425,000 is

---

[5] *See also, e.g.*, *Flores v. Anjost Corp.*, 2014 WL 321831, at *6 (S.D.N.Y. Jan. 29, 2014) ("[E]vidence…that [d]efendants could not withstand a greater judgment," including evidence that defendants "obtained financing to pay the amount due under the settlement," weighed in favor of approving the settlement.); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 WL 5305694, at *5 (S.D.N.Y. Oct. 4, 2012) ("It is likely that [d]efendants could not have withstood a greater judgment due to the financial conditions they faced.... [T]he Settlement Agreement eliminates the risk of collection."); *Chavarria v. New York Airport Service, LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (citation omitted) ("The risk that defendants would not be able to satisfy a larger judgment was a significant factor in plaintiffs' decision to settle their claims. The Settlement Agreement eliminates the risk of collection from defendants who may not be operating after a lengthy litigation."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) ("[I]t is unlikely that the Company could withstand a substantial judgment.... Given these conditions, obtaining a greater recovery than provided by the Settlement would have been difficult.").

within "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972)). Judging whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken & Assocs. Securities Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

When the Settlement benefits are weighed against the pending litigation risks and potential alternative outcomes, the proposed Settlement is more than reasonable. For example, absent this Settlement Agreement, Defendants could prevail on their legal arguments to defeat liability entirely, resulting in no recovery for the Class whatsoever. Considering these possibilities, the Parties found the settlement amount to be more than reasonable. Accordingly, the remaining *Grinnell* factors weigh in favor of preliminary approval.

**B.**     **Plaintiffs ask the Court to find that it will likely certify the Class and Subclass.**

Where a settlement is reached before certification, a court must determine whether to certify the settlement class. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020). Certification of a settlement class is warranted when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See Soler*, 2023 WL 2492977, at *5. Certification of the Class and California Subclass is warranted here. Courts routinely certify Rule 23 classes in data breach cases for settlement purposes. *See, e.g., In re Solara Med. Supplies Data Breach Litig.*, 2022 WL 1174102 (S.D. Cal. Apr. 20, 2022); *In re Capital One Consumer Data Sec. Breach Litig.*, 2022 WL 18107626 (E.D. Va. Sept. 13, 2022); *Fero v. Excellus Health Plan, Inc.*,

17

502 F. Supp. 3d 724 (W.D.N.Y. 2020).

1.    **The requirements of FED. R. CIV. P. 23(a) are satisfied.**

a.    **Numerosity (FED. R. CIV. P. 23(a)(1))**

Based on the discovery produced by Defendants, there are approximately 552,146 Class Members and 100,000 California Subclass Members. Joint Decl. ¶ 33. The members of a proposed class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Numerosity is satisfied if the proposed class consists of forty or more members. *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

b.    **Commonality (FED. R. CIV. P. 23(a)(2))**

The second requirement for certification mandates that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Rule 23(a)(2) is a "low hurdle." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014) (quotation omitted). This factor is satisfied if there is a common issue that "'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Here, Plaintiffs' claims satisfy the "commonality" prong because all Class Members and California Subclass Members had their Personal Information compromised in the Security Incident. Whether Defendants' data security practices were sufficient is a common question of fact embedded in both Class Members' and California Subclass Members' claims. Moreover, this question would have been answered using common evidence as it does not appear in discovery that Defendants' security practices varied across Class Members. *See Sykes*, 70 F.3d 84 (affirming determination of commonality based on "defendants' alleged unitary course of conduct"). Accordingly, the commonality requirement is satisfied.

### c.    Typicality (FED. R. CIV. P. 23(a)(3))

Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quotation omitted). In other words, Plaintiffs can bring claims based on "a unitary course of conduct by a single system." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 70 (S.D.N.Y. 2018) (quoting *Floyd v. City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2012)); *see also Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (finding typicality because the "claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

Plaintiffs bring claims typical of Class Members and California Subclass Members, as each had their Personal Information potentially compromised in the Security Incident. Additionally, Plaintiffs and Class Members each had their Personal Information stored on Somnia's systems and each Plaintiff has standing to pursue their claims. Accordingly, the typicality requirement is satisfied.

### d.    Adequacy of Representation (FED. R. CIV. P. 23(a)(4))

Class representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To determine adequacy, the Court considers whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 423 (S.D.N.Y. 2019). "[A]dequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes*, 780 F.3d at 90 (quotation omitted).

Here, Plaintiffs have no antagonistic interests in relation to other Class Members or California Subclass Members since each had their Personal Information stored within Somnia's systems and potentially compromised in the Security Incident. Thus, Plaintiffs are sufficiently

interested in the outcome of this case to ensure their vigorous advocacy. Plaintiffs are not subject to unique defenses and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class. Plaintiffs' interests align with those of the other Class Members and California Subclass Members.

In addition, proposed Class Counsel, Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and Finkelstein, Blankinship, Frei-Pearson, & Garber, LLP ("FBFG") are active practitioners with substantial experience prosecuting complex class actions nationwide, including data breach class actions, in both state and federal courts. *See* Joint Decl., Exs. A-B (LCHB & FBFG firm resumes). Thus, Plaintiffs and their counsel can fairly and adequately represent the Class and Subclass.

<h3 style="text-align:center">2.    The requirements of FED. R. CIV. P. 23(b)(3) are satisfied.</h3>

In addition to the requirements of Rule 23(a), Plaintiffs seek certification of the Class and California Subclass under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

<h3 style="text-align:center">a.    Predominance</h3>

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotation omitted). Rule 23(b)(3)'s predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d

108, 118 (2d Cir. 2013) (quoting *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).

Here, the proposed Class satisfies the predominance requirement because common questions regarding Defendants' course of conduct and treatment of Class Members' Personal Information present a significant aspect of the case and can be resolved for all Class Members in a single adjudication. And for California Subclass Members, the predominance requirement is satisfied based on the same common questions as well as the fact that statutory damages would be available uniformly to all California Subclass Members.

### b.      Superiority

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there will be no trial."). And resolution of many thousands of relatively low-value claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. Further, there are no other pending actions that challenge the at-issue claims. *Soler*, 2023 WL 2492977, at *6 (finding superiority in granting preliminary approval due to "large size of the class, the fact that there are no other pending actions that challenge the at-issue claims, and the desirability of concentrating the litigation in a single forum"). The superiority requirement is satisfied.

### 3.      The Class and California Subclass are ascertainable.

The Class and California Subclass are ascertainable because they are "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 264 (2d Cir. 2017). The criteria for the Class and California Subclass are

"clearly objective" because they are based on Defendants' internal records of the Personal

Information that was in Somnia's systems at the time of the Security Incident. With respect to

California Subclass Members, the same analysis applies except that Subclass Members are

defined by another objective criteria within Defendants' records—their state of residence. In fact,

Defendants already employed this objective criteria to provide notice to Class Members and

California Subclass Members of the Security Incident in late 2022. This satisfies the implied

requirement of ascertainability within this Circuit. *See, e.g.*, *Vega v. Semple*, 2024 WL 2941657,

at *13-14 (D. Conn. June 11, 2024) (finding ascertainability based on use of defendant's own

records).

### C. <u>The proposed Notice Plan complies with Rule 23 and due process.</u>

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class

members who would be bound by the proposal if giving notice is justified by the parties'

showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1). Class

members are entitled to the "best notice that is practicable under the circumstances" of any

proposed settlement before it is finally approved by the Court. FED. R. CIV. P. 23(c)(2)(B). "The

notice may be by one or more of the following: United States mail, electronic means, or other

appropriate means." *Id.* Due process requires "the best notice practicable under the

circumstances, including individual notice to all members who can be identified through

reasonable effort." *Amchem*, 521 U.S. at 617. Notice must "state in plain, easily understood

language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class

claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney

if the member so desires; (v) that the court will exclude from the class any member who requests

exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a

class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(c)(2)(B).

The Notice Plan (*see generally* Agmt. §§ 8-12) meets all applicable standards. The Notice Plan provides direct notice to Class Members via email and mail and establishes a Settlement Website—where Class Members can complete a Claim Form and view the full Settlement Agreement, the detailed long-form notice, and other key case documents, including the forthcoming Class Counsel motion for attorneys' fees. *Id.* § 9.04. The proposed forms of notice (Agreement Exs. B-D) inform Class Members, in clear and concise terms, of key information about the Settlement, including the deadline to file a claim, the deadline to opt-out of or object to the Settlement, the date of the Final Approval Hearing (and that the hearing date may change without further notice). The notices disclose that, by participating in the Settlement, Class Members give up the right to sue directly and they direct Class Members to the Settlement Website for further information.

Class Members will have ninety (90) days from the Settlement Notice Date to submit a claim, Agmt. § 2.11, and sixty (60) days to object or opt-out of the Settlement. *Id.* §§ 2.33, 2.34. The Claims Administrator will post Class Counsel's motion for attorneys' fees on the Settlement Website at least thirty days before the deadline to object. Plaintiffs respectfully request that the Court approve the proposed Notice Plan.

## VI.    SCHEDULING AND FINAL FAIRNESS HEARING

The next steps in the settlement approval process are to notify Class Members of the Settlement and permit them to file claims, opt-out or object, and then hold a Final Approval Hearing. To those ends, the Parties propose the following schedule:

| Event | Date |
|---|---|
| Settlement Notice Date | **30 days after issuance of Preliminary Approval Order** |
| Last day for Plaintiffs and Class Counsel to file | **30 days after Settlement Notice Date** |

| | |
|---|---|
| motion for attorneys' fees, expenses, and service awards | |
| Opt-Out Deadline/Objection Deadline | **60 days after Settlement Notice Date** |
| Last day for Class Members to file Claim Forms (excluding time set forth in the Settlement to correct errors or omissions in filed Claim Forms) | **90 days after Settlement Notice Date** |
| Last day for Parties to file any motions for final approval, including any responses to objections | **16 days before Final Approval Hearing** |
| Final Approval Hearing | **100 days after filing of Plaintiffs' Motion for Preliminary Approval, or as soon thereafter as practicable** |

## VII.    <u>CONCLUSION</u>

For the reasons set forth above and in the accompanying materials, Plaintiffs respectfully request the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) holding that it will likely certify, for settlement purposes, the Class and California Subclass; (3) appointing Plaintiffs as Class Representatives representing the Class and, as to Plaintiffs Raycine Sommers, Kelly Wilson, and Thomas Booth Harris, as Class Representatives for the California Subclass; (4) appointing Lieff Cabraser Heimann & Bernstein, LLP and Finkelstein, Blankinship, Frei-Pearson & Garber, LLP as Class Counsel for the Class and California Subclass; (5) approving the Parties' proposed Notice Plan, including the proposed forms of notice, and directing that notice be disseminated pursuant to such Notice Plan and FED. R. CIV. P. 23(c) and (e)(1); (6) appointing Angeion as Claims Administrator for the Settlement and directing it to carry out the duties and responsibilities of the Claims Administrator specified in the Agreement; (7) setting deadlines for Class Members and California Subclass Members to request exclusion from the Settlement, to object to the Settlement, and submit claims for payment; (8) staying all non-Settlement-related proceedings in this lawsuit pending final approval of the Settlement; and (9) scheduling a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement pursuant to FED. R. CIV. P. 23(e)(2).

Dated:  July 19, 2024                    Respectfully submitted,

By: */s/ Jason L. Lichtman* _____          By: */s/ Todd S. Garber* _____
    Jason L. Lichtman                        Todd S. Garber
    Sean A. Petterson                        Andrew C. White
    Margaret M. Becko                        **FINKELSTEIN, BLANKINSHIP,**
    **LIEFF CABRASER HEIMANN**                **FREI-PEARSON & GARBER, LLP**
    **& BERNSTEIN, LLP**                      One North Broadway, Suite 900
    250 Hudson Street, 8th Floor             White Plains, NY 10601
    New York, New York 10013                 914.298.3283
    212.355.9500                             Email:  tgarber@fbfglaw.com
    Email:  jlichtman@lchb.com                        awhite@fbfglaw.com
        spetterson@lchb.com
        mbecko@lchb.com

    *Attorneys for Plaintiffs and Proposed Class Counsel*