## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRENE CHABAK, ARMANDO CARRASCO, RANDY POLK, KELLY WILSON, THOMAS BOOTH HARRIS, SCOTT WEISCOPE, LAVINA HENDERSON, JEREMY HENDERSON, and RAYCINE SOMMERS, *individually and on behalf of all others similarly situated*, | Case No. 7:22-cv-9341 |
| | Hon. Philip M. Halpern |
| Plaintiffs, | |
| v. | |
| SOMNIA INC., ANESTHESIA SERVICES OF SAN JOAQUIN P.C., PALM SPRINGS ANESTHESIA SERVICES P.C., RESOURCE ANESTHESIOLOGY ASSOCIATES OF IL P.C., RESOURCE ANESTHESIOLOGY ASSOCIATION OF NM INC., and ANESTHESIA ASSOCIATES OF EL PASO, P.A., | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that on April 28, 2025 at 2:30 p.m. EST, or as soon thereafter

as the matter may be heard, Plaintiffs Irene Chabak, Armando Carrasco, Randy Polk, Kelly

Wilson, Thomas Booth Harris, Scott Weiscope, Lavina Henderson, Jeremy Henderson, and

Raycine Sommers (collectively, "Plaintiffs") will move, before the Honorable Philip M. Halpern

at the United States District Courthouse for the Southern District of New York, located at 300

Quarropas St., White Plains, New York 10601, for final approval of the Class Action Settlement

Agreement and Release (ECF No. 79-1) (the "Settlement" or "Settlement Agreement") and entry

of the proposed Final Order and Judgment, attached hereto.

**PLEASE TAKE FURTHER NOTICE** that Plaintiffs and Class Counsel believe the proposed Settlement is fair, reasonable, and adequate and, therefore, that the Court should enter the proposed Final Order and Judgment, which, among other things:

1.      Grants Final Approval of the Settlement Agreement as fair, reasonable, and adequate under Rule 23 and in conformity with *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974);

2.      Confirms the certification of the Class and California Subclass, pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) for settlement purposes;

3.      Confirms the appointment of Plaintiffs as Class Representatives representing the Class and, as to Plaintiffs Raycine Sommers, Kelly Wilson, and Thomas Booth Harris, as Subclass Representatives for the California Subclass;

4.      Confirms the appointment of Lieff Cabraser Heimann & Bernstein, LLP and Finkelstein, Blankinship, Frei-Pearson & Garber, LLP as Class Counsel for the Class and California Subclass;

5.      Confirms the Parties completed Class Notice, which satisfied Rule 23 and due process;

6.      Upon the Effective Date, directs the Parties and Claims Administrator to implement the Settlement Agreement pursuant to its terms, including by (i) distributing Default Settlement Payments to Class Members and California Subclass Members who have filed timely and valid Claim Forms; (ii) approving disbursements of Out-of-Pocket Losses to compensate Class Members and California Subclass Members who have submitted timely and valid Claims for Out-of-Pocket Losses; and (iii) directing Defendants to implement the business practice changes pursuant to Section 5.05 of the Settlement Agreement, to the extent not already implemented;

7.      Dismisses this Action and each related action with prejudice, and in conformity with Section 12.03 of the Settlement;

8.      Retains jurisdiction over the implementation and terms of the Settlement, and Class Counsel's motion for attorneys' fees, expenses, and service awards;

9.      Awards service awards to Plaintiffs from the Settlement Fund; and

10.     Awards attorneys' fees and the reimbursement of reasonable costs and expenses to Class Counsel, payable from the Settlement Fund.

This motion is supported by the accompanying *Memorandum of Law*, the Declaration of Navid Zivari of Angeion Group, the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

Dated: April 10, 2025                              Respectfully submitted,

By: */s/ Jason L. Lichtman*                          By: */s/ Todd S. Garber*

    Jason L. Lichtman                               Todd S. Garber
    Sean A. Petterson                               **FINKELSTEIN, BLANKINSHIP,**
    Margaret M. Becko                               **FREI-PEARSON & GARBER, LLP**
    **LIEFF CABRASER HEIMANN**                       One North Broadway, Suite 900
    **& BERNSTEIN, LLP**                             White Plains, NY 10601
    250 Hudson Street, 8th Floor                    914.298.3283
    New York, NY 10013                              Email:  tgarber@fbfglaw.com
    212.355.9500
    Email:  jlichtman@lchb.com
          spetterson@lchb.com
          mbecko@lchb.com

*Attorneys for Plaintiffs and the Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

IRENE CHABAK, ARMANDO CARRASCO,
RANDY POLK, KELLY WILSON, THOMAS
BOOTH HARRIS, SCOTT WEISCOPE,
LAVINA HENDERSON, JEREMY
HENDERSON, and RAYCINE SOMMERS,
*individually and on behalf of all others
similarly situated*,

        Plaintiffs,

  v.

SOMNIA INC., ANESTHESIA SERVICES OF
SAN JOAQUIN P.C., PALM SPRINGS
ANESTHESIA SERVICES P.C., RESOURCE
ANESTHESIOLOGY ASSOCIATES OF IL
P.C., RESOURCE ANESTHESIOLOGY
ASSOCIATION OF NM INC., and
ANESTHESIA ASSOCIATES OF EL PASO,
P.A.,

        Defendants.

Case No. 7:22-cv-9341

Hon. Philip M. Halpern

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

    A.    Initial Discovery.......................................................................................... 2

    B.    Mediation and Settlement ........................................................................... 3

    C.    Preliminary Approval of the Settlement ..................................................... 3

III.    SUMMARY OF THE SETTLEMENT TERMS .................................................. 4

    A.    Class Definition .......................................................................................... 4

    B.    Monetary Relief ......................................................................................... 4

    C.    Business Practice Changes.......................................................................... 5

    D.    Release ........................................................................................................ 5

    E.    Attorneys' Fees and Costs, and Service Awards for Class Representatives.......... 6

IV.    LEGAL STANDARD........................................................................................... 6

V.    ARGUMENT ....................................................................................................... 8

    A.    The Proposed Settlement Satisfies Rule 23(e)(2) and the *Grinnell* Factors. ......... 8

        1.    The Settlement is procedurally fair............................................... 9

        2.    The Settlement provides meaningful relief to the Class and California Subclass. .............................................................. 11

        3.    The Settlement treats Class Members and California Subclass Members equitably..................................................... 16

        4.    *Grinnell* Factor 2: The reaction of the Class and California Subclass supports final approval............................................... 16

        5.    The remaining factors weigh in favor of approval................................. 17

    B.    The Class Notice Satisfies Rule 23(c)(2) and Due Process Rights..................... 19

    C.    The Court Should Confirm Certification of the Class and California Subclass................................................................................ 20

    D.    The Request for Fees, Costs, and Service Awards is Reasonable. ..................... 21

VI.    CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)....................................................................................8

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................21

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).....................................................................14

*Beasley v. TTEC Servs. Corp.*,
    2024 WL 710411 (D. Colo. Feb. 21, 2024)...........................................................16

*Brent v. Advanced Med. Mgmt., LLC*,
    2024 WL 5118528 (D. Md. Dec. 16, 2024)............................................................12

*Carter v. Vivendi Ticketing US LLC*,
    2023 WL 8153712 (C.D. Cal. Oct. 30, 2023).........................................................12

*Chakejian v. Equifax Info. Serv., LLC*,
    275 F.R.D. 201 (E.D. Pa. 2011).............................................................................17

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)....................................................................17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................... *passim*

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)......................................................................................9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).....................................................................................11

*D'Angelo v. Hunter Bus. Sch., Inc.*,
    2023 WL 4838156 (E.D.N.Y. July 28, 2023).........................................................11

*Desue v. 20/20 Eye Care Network, Inc.*,
    2023 WL 4420348 (S.D. Fla. July 8, 2023)............................................................13

*In re Fab Universal Corp. S'holder Derivative Litig.*,
    148 F. Supp. 3d 277 (S.D.N.Y. 2015)....................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

*Flores v. Anjost Corp.*,
    2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) .......................................................................15

*Flores v. CGI Inc.*,
    2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ................................................................6, 8

*In re Forefront Data Breach Litig.*,
    2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ...............................................................12, 13

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
    2025 WL 457896 (S.D. Fla. Feb. 11, 2025) ....................................................................13

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).............................................................................7

*Guippone v. BH S&B Holdings LLC*,
    2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016)........................................................14, 15, 18

*Holden v. Guardian Analytics, Inc.*,
    2024 WL 2845392 (D.N.J. June 5, 2024) ........................................................................12

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
    2022 WL 2063864 (S.D.N.Y. June 8, 2022) ....................................................................13

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................................17

*In re Marsh ERISA Litig.*,
    265 F.R.D..........................................................................................................15

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d. Cir. 2009)........................................................................................6

*In re Michael Milken & Assocs. Secs. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................................18

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ..............................................................................7, 8, 9, 16

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020).............................................................................14

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972).....................................................................................15, 18

## TABLE OF AUTHORITIES

Page(s)

*Odom v. Hazen Transp., Inc.*,
    275 F.R.D. 400 (W.D.N.Y. 2011)..........................................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997)..........................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019)......................................................................14, 18

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...............................................................12

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    527 F. Supp. 3d 269 (E.D.N.Y. 2021) ................................................................19

*Reyes v. Summit Health Mgmt., LLC*,
    2024 WL 472841 (S.D.N.Y. Feb. 6, 2024)........................................................16

*In re Synchrony Fin. Sec. Litig.*,
    2023 WL 4992933 (D. Conn. Aug. 4, 2023) ........................................................8

*TBK Partners, Ltd. v. Western Union Corp.*,
    675 F.2d 456 (2d Cir. 1982)................................................................................19

*Torres v. Gristede's Operating Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir.
    2013) ...................................................................................................................14

*Touhey v. United States*,
    2011 WL 3179036 (C.D. Cal. July 25, 2011).....................................................12

*Vega v. Semple*,
    2024 WL 2941657 (D. Conn. June 11, 2024)......................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................7, 17, 18

*Zepeda v. PayPal, Inc.*,
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017), *appeal dismissed*, 2017 WL
    3138104 (9th Cir. July 11, 2017).......................................................................12

## Statutes

Cal. Civ. Code § 56.36(b)(1) .........................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Court Rules**

Fed. R. Civ. P. 23(a) ....................................................................................4, 8, 21

Fed. R. Civ. P. 23(a)(1) ......................................................................................21

Fed. R. Civ. P. 23(a)(2) ......................................................................................21

Fed. R. Civ. P. 23(a)(3) ......................................................................................21

Fed. R. Civ. P. 23(a)(4) ......................................................................................21

Fed. R. Civ. P. 23(b) .............................................................................................8

Fed. R. Civ. P. 23(b)(3) ..................................................................................8, 21

Fed. R. Civ. P. 23(c) ........................................................................................2, 19

Fed. R. Civ. P. 23(c)(2) .........................................................................................8

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................19

Fed. R. Civ. P. 23(e) ..................................................................................... *passim*

Fed. R. Civ. P. 23(e)(2) ................................................................................ *passim*

Fed. R. Civ. P. 23(h) ...........................................................................................22

**Other Authorities**

Federal Judicial Center, *Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide* (2010),
    www.fjc.gov/sites/default/files/2012/NotCheck.pdf ............................................19

*Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022)...................................7

# I.    **INTRODUCTION**

Plaintiffs respectfully ask this Court to grant final approval of the Settlement (ECF No. 79-1).[1] Neither Defendants nor any of the proposed Class Members oppose this request.

The Settlement is the product of nearly two years of litigation, three days of mediation with two different mediators, and a thorough investigation into (and confirmation of) Defendants' limited ability to pay a future judgment. It will fully resolve all putative nationwide class claims in this Action, the state law claims of the California Subclass, and create a $2,425,000 non-revisionary cash fund for the benefit of the Class and California Subclass. In addition to this monetary relief, Defendants have also warranted that Plaintiffs and Class Counsel were a catalyst in causing Defendants to invest over $750,000 in upgraded security to significantly reduce the risk of further security incidents.

Based on the views of experienced counsel, who were informed by the strengths and weaknesses of Plaintiffs' cases, these benefits are immediate and substantial, especially considering the costs and risks of continued litigation—chief among them, Defendants' ability to pay a future judgment.

The notice program was a meaningful success. Of the 553,257 unique Class Members, the Settlement Administrator notified, via direct mail or email notice, over 525,000 Class Members, or approximately 95% of the Class. Declaration of Navid Zivari ("Angeion Decl."), ¶¶ 8-15. To supplement this direct notice, the Settlement Administrator established a website and toll-free hotline dedicated to this Settlement. *Id.* ¶¶ 16-19. This notice program resulted in 13,417 claims, 13,102 of which the Settlement Administrator determined were valid, a claims rate of more than 2% of the total Class, which is in line with other data breach settlements. *Id.* ¶¶ 20-22. Demonstrating the strength of the Settlement, there have been *no objections* from Class or Subclass Members and only a tiny fraction

---

[1] Unless otherwise noted, capitalized terms have the meaning attributed to them in the Parties' Class Action Settlement Agreement and Release (the "Settlement" or "Agmt."), ECF No. 79-1.

of the Class, 65 individuals, requested to be excluded. *See id.* ¶¶ 25-26; Ex. H (list of opt-outs).

This Settlement satisfies all criteria for final approval. Plaintiffs thus respectfully request that the Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) certify the Class and California Subclass for purposes of judgment on the Settlement; (3) find the Class Notice satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process, and constitutes the best notice practicable under the circumstances; and (4) enter final judgment.

## II.    **BACKGROUND**

On October 31, 2022, Plaintiff Irene Chabak filed a putative class action in this Court against Somnia. ECF No. 1. After the Court appointed proposed Class Counsel as interim co-lead counsel and consolidated six other actions against Somnia, Plaintiffs filed a Consolidated Amended Complaint on March 2, 2023 generally alleging that Defendants' insufficient cybersecurity practices caused the Security Incident and brought claims under: (1) negligence; (2) negligence per se; (3) breach of confidence; (4) unjust enrichment; (5) the California Confidentiality of Medical Information Act ("CMIA"); (6) the California Unfair Competition Law; (7) the California Consumer Legal Remedies Act; and (8) the California Consumer Records Act. ECF No. 28.

On June 14, 2023, the Court held a pre-motion telephonic conference regarding Defendants' motion to dismiss. On June 15, 2023, the Parties stipulated to the voluntary dismissal of Plaintiffs' California Unfair Competition Law and California Consumer Records Act claims. ECF No. 49. On September 22, 2023, the Parties completed briefing Defendants' motion to dismiss. ECF Nos. 53-56.

### A.    **Initial Discovery**

On June 27, 2023, Plaintiffs served thirteen requests for production and seven interrogatories on the P.C. Defendants and ten requests for production and eleven interrogatories on Somnia. *See* Joint Declaration of Jason Lichtman and Todd Garber in support of Plaintiffs' Motion for Preliminary Approval, ECF No. 79-2 ("Joint Decl."), ¶ 30. From August 2023 to January 2024, the Parties met and

conferred about numerous discovery issues, including the production of targeted initial documents. *Id.* ¶¶ 30-34. In total, Defendants made three document productions spanning more than 5,000 pages, including key contracts between Defendants, cybersecurity risk assessments from each Defendant (to the extent they existed), and documents that Somnia provided to regulators that explained the Security Incident in detail. *Id.* ¶ 33. Plaintiffs also served a second set of interrogatories on each Defendant on November 1, 2023. *Id.* ¶ 34.

Separately, on November 8, 2023, Somnia served requests for production and interrogatories on each Plaintiff, which each answered on December 8, 2023. *Id.* ¶ 35. Four Plaintiffs produced documents responsive to Somnia's requests for production. *Id.* ¶ 36.

### B.    <u>Mediation and Settlement</u>

On April 16, 2024, the Parties conducted a full-day mediation with Mark LeHocky of ADR Services Inc. *Id.* ¶ 40. After that mediation was unsuccessful, the Parties promptly engaged a second mediator, Jill Sperber of Judicate West, and conducted another full-day mediation on May 30, 2024. *Id.* ¶ 41. After making initial progress during that mediation, the Parties agreed to mediate again with Ms. Sperber on June 3, 2024. *Id.* ¶ 42. During those mediations, one area of focus was Defendants' ability to pay, and Plaintiffs were provided with a tutorial on how Defendants' revenue cycle works and how much Defendants could pay beyond their wasting insurance policy (facts which were verified in a declaration provided thereafter by Somnia's Chief Financial Officer). *Id.* ¶ 43. After continued discussions and negotiations with Ms. Sperber and directly between the Parties, on June 18, 2024, the Parties accepted a mediator's proposal. *Id.* ¶ 45. The Parties thereafter drafted, negotiated, and executed the Settlement on July 17 and 18, 2024. *Id.* ¶ 46.

### C.    <u>Preliminary Approval of the Settlement</u>

On August 1, 2024, Plaintiffs filed a Notice of Motion and Unopposed Amended Motion for Preliminary Approval of Class Action Settlement and supporting memorandum of law. ECF No. 79.

On September 3, 2024, this Court granted preliminary approval of the settlement, holding, *inter alia*:

- "[The Court] will likely be able to approve the Settlement under Fed. R. Civ. P. 23(e)(2) and to finally certify the Class and the California Subclass for purposes of judgment pursuant to the Settlement";

- "[T]he Settlement is procedurally fair, the product of arm's length negotiations";

- "[T]he Settlement relief provided—a $2,425,000 non-reversionary settlement fund—is fair, reasonable, and adequate taking into account, *inter alia*, the costs, risks, and delay of further litigation, trial and appeal, the alleged harm to the Class and the California Subclass, the proposed method of distributing payments to the Class and the California Subclass, and the absence of any agreement required to be identified under Rule 23(e)(3)[;]" and

- "[T]he Settlement is substantively fair and treats the Class and the California Subclass equitably relative to each other."

ECF No. 82 ("PAO"), ¶¶ 4-7. In addition, the Court concluded it likely will certify the Class and California Subclass after finding that the conditions of Rules 23(a) and (b)(3) are satisfied. *Id.* ¶ 10. The Court also appointed Plaintiffs as Class Representatives and Subclass Representatives; and Lieff Cabraser Heimann & Bernstein, LLP and Finkelstein, Blankinship, Frei-Pearson & Garber LLP as Class Counsel. *Id.* ¶¶ 12-13.

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A.    Class Definition

The "Class" is comprised of "All natural persons residing in the United States whose Personal Information was compromised in the Security Incident." PAO ¶ 8; Agmt. § 2.14. The "California Subclass" consists of "All natural persons residing in California whose Personal Information was compromised in the Security Incident." PAO ¶ 9; Agmt. § 2.06.

### B.    Monetary Relief

Defendants have agreed to pay $2,425,000 to create a non-reversionary Settlement Fund for the benefit of the Class and California Subclass. Agmt. § 4.01. Class Members and California Subclass

Members who submitted a valid and timely claim through a simple, streamlined process for Out-of-Pocket Losses or a Default Settlement Payment will receive a Cash Award. *Id*. §§ 2.09, 5. Class Members and California Subclass Members were entitled to make a claim for Out-of-Pocket Losses subject to an overall claims cap of $2,500. *Id.* § 5.02. Class Members and California Subclass Members who submitted a valid claim for Out-of-Pocket Losses are also automatically entitled to a Default Settlement Payment. *Id.* §§ 5.03(a), 10.02(b)(3). California Subclass Members are entitled to three "shares" and Class Members are entitled to one "share" as part of the *pro rata* split of the Default Settlement Payment. *Id.* This difference accounts for the fact that California Subclass Members are releasing their CMIA claims, which provide for statutory damages.

All Cash Awards will be distributed after the deducting Settlement-related costs, including expenses of Class Notice and settlement administration, any Court-awarded attorneys' fees, expenses, and named plaintiff Services Awards, from the Settlement Fund. *Id*. §§ 5.04, 6.01(a), 6.02, 8.03.

### C.    **Business Practice Changes**

In addition to the monetary payment, Defendants have invested over $750,000 in upgraded security to significantly reduce the risk of further security incidents. *Id.* § 5.05. Defendants agreed that Plaintiffs and Class Counsel "were a catalyst in causing Defendants to undertake remedial measures they will or have already undertaken." *Id.*

### D.    **Release**

In exchange for the relief described above, Plaintiffs and Class Members who do not timely opt out of the Settlement will fully release Defendants and related anesthesiologist providers under common ownership of Defendants from any and all claims that could have been brought in the First Amended Complaint arising from or related to the Security Incident. *Id.* §§ 2.42, 14.

### E.    Attorneys' Fees and Costs, and Service Awards for Class Representatives

In accordance with the Settlement terms and as detailed in their previously filed motion, ECF No. 83, Class Counsel requested an award of attorneys' fees of $1,000,000—*i.e.* 31.5% of the total value of the Settlement—plus reimbursement of litigation expenses of $50,294.92 to compensate Class Counsel for the work already performed in this case, all work remaining to be performed in connection with this Settlement, the risks undertaken in prosecuting this case, and their out-of-pocket litigation expenses. That separate motion also seeks service awards of $1,000 for each Class and California Subclass Representative ($9,000 total) in recognition of the significant time and effort they personally invested in this litigation, including responding to discovery requests and consulting with Class Counsel. *Id.*

The enforceability of the Settlement is not contingent on the Court's approval of that motion. Agmt. § 6.03. The Settlement also permitted Defendants to oppose some or all of Plaintiffs' request for fees, *id.* § 6.01(c), which Defendants did not do. Any un-awarded attorneys' fees, costs, or service award will be paid directly to Class Members. In accord with the Settlement and the Preliminary Approval Order, Plaintiffs' motion for an award of attorneys' fees, reimbursement of litigation expenses, and service awards is publicly available on the Settlement Website. *See* Angeion Decl. ¶ 17; Agmt. § 9.04; PAO ¶ 32.

## IV.    LEGAL STANDARD

Even following the 2018 amendments to the Federal Rules, "[i]n the Second Circuit, 'there is a strong judicial policy in favor of settlements, particularly in the class action context." *Flores v. CGI Inc.*, 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022) (quoting *McReynolds v. Richards-Cantave*,

588 F.3d 790, 803 (2d. Cir. 2009)).[2] Pursuant to Rule 23(e), a class action settlement must be approved

by the presiding court before it can become effective. Court approval proceeds in two stages, the first

of which, preliminary approval of the proposed settlement and direction of notice to the class, has

occurred and second, a final approval hearing, at which the Court considers argument concerning the

fairness, adequacy, and reasonableness of the proposed settlement. *See In re GSE Bonds Antitrust

Litig.*, 414 F. Supp. 3d 686, 691-92 (S.D.N.Y. 2019).

The 2018 revisions to Rule 23(e) focus on four "primary procedural considerations and

substantive qualities that should always matter to the decision whether to approve [a settlement]

proposal." *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting Fed. R. Civ. P.

23(e)(2) advisory committee's notes to 2018 amendments). Those include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
> i.     the costs, risks, and delay of trial and appeal;
> ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> iii.   the terms of any proposed award of attorney's fees, including timing of payment; and
> iv.   any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, courts in the Second Circuit review the traditional *Grinnell* factors:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of

---

[2] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (recognizing "strong judicial policy in favor of settlements, particularly in the class action context"); *Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Moses*, 79 F.4th at 242 n.3 (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

Finally, the "district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the relevant subsection of Rule 23(b)." *Flores*, 2022 WL 13804077, at *2 (citing *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012)).

## V.    <u>ARGUMENT</u>

The Settlement satisfies all the relevant criteria and merits final approval. *First*, the Settlement—which calls for substantial monetary relief and business practice changes—is fundamentally fair, reasonable, and adequate; it satisfies the *Grinnell* factors readily. *Second*, the Settlement Administrator successfully implemented the Court-approved Class Notice, complying with the requirements of Rule 23(c)(2) and due process rights. *Third*, the Class and California Subclass merit certification pursuant to Rules 23(a) and (b)(3) for purposes of judgment on the Settlement. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for final approval of the Settlement.

### A.    <u>The Proposed Settlement Satisfies Rule 23(e)(2) and the *Grinnell* Factors.</u>

Each of the Rule 23 and *Grinnell* factors weigh in favor of granting final approval of the Settlement. In evaluating the Rule 23(e)(2) factors, courts in this Circuit look at both the *substantive* terms of the settlement and whether it is *procedurally* fair—*i.e.*, "whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023)

(cleaned up). That evaluation requires consideration of the nine "*Grinnell* factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974), which overlap with the Rule 23(e)(2) factors. *See, e.g.*, *Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors.").

### 1.    The Settlement is procedurally fair.

The Court first must consider procedural fairness, which analyzes: (i) whether "the class representatives and class counsel have adequately represented the class" and (ii) whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B); *see also Grinnell*, 495 F.2d at 463 (the third *Grinnell* factor—*i.e.*, the stage of the proceedings and the amount of discovery completed—overlaps with Rule 23(e)(2)(B)'s "negotiated at arm's length" factor).

### a.    The Class and California Subclass have been vigorously represented.

To determine whether the Class was represented adequately, courts consider whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, in granting preliminary approval, this Court already found that "Plaintiffs and Class Counsel have adequately represented, and will continue to adequately represent, the Class and the California Subclass." PAO ¶ 5.

Plaintiffs' interests are aligned with those of the Class and California Subclass: all suffered the same alleged injury (the exposure of their Personal Information) and have the same interest in securing compensation for that exposure. Moreover, all have the same interest in securing the business practice changes for which Plaintiffs were a "catalyst" and benefit equally from those changes. Plaintiffs have also adequately represented the Class and California Subclass, including by agreeing to step forward to pursue this litigation, remaining actively engaged in the proceedings, responding to discovery requests and interrogatories, producing responsive documents, and regularly communicating with

Class Counsel up to and including evaluating and approving the Settlement. Joint Decl. ¶¶ 35-36, 55-57. At each stage of litigation, therefore, Plaintiffs have advanced the interests of the Class and California Subclass.

Class Counsel—active practitioners with substantial experience prosecuting complex class actions nationwide, including data breach class actions, in both state and federal courts—have zealously represented the Class and California Subclass. *Id*. ¶¶ 8-9, 14-16; *see also* ECF No. 83 (motion for attorneys' fees). Immediately after the Court appointed Lieff Cabraser Heimann & Bernstein, LLP and Finkelstein, Blankinship, Frei-Pearson, & Garber, LLP as Class Counsel, the undersigned drafted an amended complaint, which included a CMIA claim that would entitle the more than 100,000 California Subclass Members to the potential for statutory damages of $1,000 per Subclass Member. *See* Cal. Civ. Code § 56.36(b)(1). Further, the amended complaint relied on the work of a leading consulting expert to search for and find evidence of Plaintiffs' information for sale on the dark web, a key consideration for establishing Article III standing. Joint Decl. ¶ 22.

Class Counsel also drafted narrow and targeted requests for production and interrogatories to obtain, at the outset, the most important documents in the case. *Id*. ¶ 30. After obtaining these key documents and quickly reviewing them to understand their implications for liability, Class Counsel subsequently met and conferred to press Defendants to produce additional documents and to withdraw their objections to certain discovery. *Id*. ¶ 32. Shortly thereafter, the Parties engaged in three day-long mediations, during which Class Counsel continued to represent the interests of the Class and California Subclass zealously. In advance of and during the mediation sessions, Plaintiffs reviewed records provided by Defendants regarding their financial condition, revenue cycle, and insurance policy.

In sum, Class Counsel are eminently qualified to conduct this litigation and have done so vigorously to date as this Court previously found in granting preliminary approval. PAO ¶ 5 ("The

Court further finds that the Settlement is procedurally fair, the product of arm's length negotiations and comes after nearly two years of litigation and initial discovery, and a detailed investigation.").

> **b.**    **The Settlement was negotiated at arm's length after the exchange of targeted discovery.**

The Settlement was reached as a result of arm's-length negotiation after hard-fought litigation and mediation, satisfying the standard for procedural fairness. The Parties engaged in three mediations before two experienced and respected mediators between April and June 2024. Joint Decl. ¶¶ 40-45. The Parties also submitted detailed mediation statements in advance of the April and May 2024 mediations. *Id.* ¶¶ 40-41. On June 18, 2024, after further negotiations and discussions around specific points related to Defendants' finances, the Parties each accepted a mediator's proposal. *Id.* ¶ 45. Prior to and during the mediation process, the Parties engaged in meaningful initial discovery, which "put the parties in a unique position to weigh the strengths and weaknesses of the case and thus addressed whether settlement was the better option as opposed to proceeding to trial." *D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 WL 4838156, at *7 (E.D.N.Y. July 28, 2023). Class Counsel were thus well-situated to evaluate the relative strengths and weaknesses of the Parties' positions, particularly the ability to obtain a complete recovery at trial, and to negotiate a fair, reasonable, and adequate settlement.

This thoroughness and consistently adversarial posture favors approval. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) (formal mediation with a neutral mediator among the "hallmarks of a non-collusive, arm's-length settlement process"). As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is procedurally fair.

> **2.**    **The Settlement provides meaningful relief to the Class and California Subclass.**

The Settlement provides a significant monetary recovery, especially when compared with the risks of continued litigation, as well as meaningful non-monetary relief. Any Class Member or

California Subclass Member that submitted a valid claim is entitled to recover their Out-of-Pocket

Costs, plus a *pro rata* share of the Settlement Fund. The Settlement Administrator approved 13,102

Claims—representing approximately 2.36% of the Class.[3] Angeion Decl. ¶¶ 20-22. This is consistent

with claim rates in other, similar data breach settlements that have been granted final approval. *See,*

*e.g.*, *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (granting

final approval data breach settlement with 1.6% claims rate for class of 437,310 and collecting cases

with similar claim rates); *Holden v. Guardian Analytics, Inc.*, 2024 WL 2845392, at *5 (D.N.J. June

5, 2024) (granting final approval of data breach settlement with 3.8% claim rate and approximately

220,000 class members); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (E.D. Wis. Mar.

22, 2023) (granting final approval of data breach settlement with 1.46% claim rate and approximately

2.4 million class members).[4]

Thus, the estimated *pro rata* amount of the Default Settlement Payment is $53.40, meaning

that each Class Member will receive $53.40 and each California Subclass Member will receive

$160.21. Angeion Decl. ¶ 24. 869 Class Members will also receive the additional monetary benefit of

Reimbursement of Out-of-Pocket Losses, with an average amount of $90.96. *Id.* That cash benefit is

substantial and significantly greater than what class members have obtained in other data breach

settlements. *See, e.g.*, *In re Forefront*, 2023 WL 6215366, at *3 (estimated cash payment of $60.58 in

data breach settlement); *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *3 (S.D. Fla.

---

[3] 13,102 valid claims divided by 553,257 unique Class Members results in a claims rate of 2.36%.

[4] *See also, e.g.*, *Brent v. Advanced Med. Mgmt., LLC*, 2024 WL 5118528, at *3-4 (D. Md. Dec. 16, 2024) (granting final approval of data breach settlement with 3.27% claim rate and approximately 310,000 class members); *Touhey v. United States*, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (granting final approval with a 2% claim rate); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (granting final approval with a claim rate of approximately 1.1%); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017), *appeal dismissed*, 2017 WL 3138104 (9th Cir. July 11, 2017) (granting final approval with 2.8% claim rate).

July 8, 2023) (providing for 3 years of identity monitoring protection or $50 cash payment); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2025 WL 457896, at *9 (S.D. Fla. Feb. 11, 2025) (providing option for "flat cash payment of $100.00"); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 WL 2063864, at *8 (S.D.N.Y. June 8, 2022) (finally approving settlement with $30 "Tier One" payment for class members without out-of-pocket losses and holding that "this award is consistent with the relief provided to class members in other data-breach cases who did not suffer out-of-pocket losses").

In addition to the monetary relief, Class Members will benefit from Defendants investing over $750,000 in upgraded security, and Defendants have acknowledged that Plaintiffs and Class Counsel "were a catalyst in causing Defendants to undertake remedial measures they will or have already undertaken." Agmt. § 5.05.

Such relief is particularly significant considering the costs and risks of further litigation, the proposed method of distributing relief to the Class and California Subclass, the Settlement terms relating to attorneys' fees, and the absence of related agreements. Fed. R. Civ. P. 23(e)(2)(i)-(iv); *see also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors 1, 4, 5, 6, 8, and 9). There is no reason to disturb this Court's prior finding in granting preliminary approval that "the Settlement relief provided…is fair, reasonable, and adequate taking into account, *inter alia*, the costs, risks, and delay of further litigation, trial and appeal, the alleged harm to the Class and the California Subclass[.]" PAO ¶ 6.

***Grinnell Factors 1, 4, & 6: Risks of further litigation***. Continued litigation would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring courts to consider "the costs, risks, and delay of trial and appeal"); *In re Payment Card Interchange Fee & Merch. Disc.*

*Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (Rule 23(e)(2)(C)'s "risks" factor overlaps with *Grinnell* factors one, four, five, and six). Indeed, this litigation resolves a complex class action that would have faced many hurdles had the Parties not reached a settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them.").

*First*, there is no guarantee the Court would certify a class if the Parties continue to litigate. Plaintiffs believe that this is a particularly straightforward case for class certification, but no plaintiff can ever be assured of maintaining class certification through trial. *See Guippone v. BH S&B Holdings LLC*, 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016) ("The risk of maintaining a class through trial is present in any class action."). Even if the Court granted class certification, there is no guarantee the certification would survive through trial, as Defendants would no doubt move for decertification, highlighting the inherent risk and expense of maintaining a class through trial. *See Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial also weighs in favor of final approval.").

*Second*, continued litigation would prove time consuming and expensive. The Parties would have to engage in substantial discovery, brief Plaintiffs' class certification motion and engage in expert discovery. Defendants would likely continue to challenge Plaintiffs' ability to prove causation and damages, among other issues, at summary judgment and trial, or on subsequent appeal. This delay would diminish the value of the recovery to Class Members. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 138-39 ("[E]ven if the Class were to win a judgment at trial, the additional delay of trial, post-trial motions and appeals could deny the Class any actual recovery for years, further reducing its value.").

Accordingly, the complexity, expense, and likely duration of further litigation weigh in favor of approving the Settlement.

*Third*, although Plaintiffs believe they would prevail on their claims, Plaintiffs would face substantial hurdles in establishing liability. Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement); *see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (approving settlement and recognizing "the concomitant risks and costs necessarily inherent in taking any litigation to completion.") (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). For example, absent this Settlement, Defendants could prevail on their legal arguments to defeat liability entirely, resulting in no recovery for the Class whatsoever.

Considering these possibilities, the Parties found the Settlement amount to be more than reasonable.

**Grinnell Factor 5: Risks of establishing damages**. The greatest risk Plaintiffs faced, however, was that any recovery would be a pyrrhic victory as Defendants would be unable to fund any judgment and would instead file for bankruptcy. Defendants' inability to withstand a greater judgment was the single most determinative factor for settling, as detailed regarding *Grinnell* Factor 7 below. *See* Joint Decl. ¶ 43; *Guippone*, 2016 WL 5811888, at *7 (noting that this factor favors final approval where sole remaining defendant "has no assets"); *Flores v. Anjost Corp.*, 2014 WL 321831, at *6 (S.D.N.Y. Jan. 29, 2014) ("[E]vidence…that [d]efendants could not withstand a greater judgment," including evidence that defendants "obtained financing to pay the amount due under the settlement," weighed in favor of approving the settlement.). Plaintiffs respectfully believe that this risk alone would justify the Settlement as fair, adequate, and reasonable: settlement relief is likely *higher* than what Plaintiffs could have recovered following trial in light of Defendants' wasting insurance policy.

**3.    The Settlement treats Class Members and California Subclass Members equitably.**

The Settlement treats members of the Class and California Subclass equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). As this Court preliminarily found, "the Settlement is substantively fair and treats the Class and the California Subclass equitably relative to each other. The Settlement provides for payments to Claimants who can demonstrate that they suffered an Out-of-Pocket Loss that is plausibly traceable to the Security Incident and provides *pro rata* shares to Californians and non-Californians accounting for the fact that Californians brought claims under the California Confidentiality of Medical Information Act, which includes statutory damages." PAO ¶ 7.

This is consistent with the structure of other data breach settlements. *See, e.g.*, *Reyes v. Summit Health Mgmt., LLC*, 2024 WL 472841, at *5 (S.D.N.Y. Feb. 6, 2024) (approving settlement with minimum payment along with *pro rata* sum "based on the amounts of the charges refunded to them by [defendant]"); *Beasley v. TTEC Servs. Corp.*, 2024 WL 710411, at *3 (D. Colo. Feb. 21, 2024) (finally approving settlement providing additional $100 award to California subclass members "in recognition of their [CMIA] claim"). Further, as discussed above, the business practice changes provided by the Settlement will equally benefit all members of the Class and California Subclass.

Under Federal Rule 23(e)(2)(D), courts also consider whether service awards are "excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Moses*, 79 F.4th at 245. The requested service awards of $1,000 per Plaintiff is "within the range of service awards regularly approved by courts in this District." *Reyes*, 2024 WL 472841, at *6 n.5 (noting that courts regularly approve service awards ranging from $1,000 to $10,000).

**4.    *Grinnell* Factor 2: The reaction of the Class and California Subclass supports final approval.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d

358, 362 (S.D.N.Y. 2002) (citing *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d

418, 425 (S.D.N.Y. 2001) (citation omitted)). *See also Wal-Mart*, 396 F.3d at 119. Here, *no* Class

Member or Subclass Member objected to the Settlement and only 65 individuals out of 553,257 Class

Members and Subclass Members requested to be excluded. Angeion Decl. ¶¶ 25-26, Ex. H. This is

especially noteworthy, as "the notice and approval process generally solicits negative feedback

regarding a settlement, because it is designed to solicit opt outs and objections by advising class

members of the procedures and deadlines for filing such responses with the court." *Charron v. Pinnacle*

*Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012). Indeed, courts find the class's reaction to

be positive and favor final approval when faced with far more objectors and opt outs. *See id.* at 196

(118 objectors). Courts have also found that silence from class members constitutes a favorable

response when considering whether to approve a settlement. *See Chakejian v. Equifax Info. Serv., LLC*,

275 F.R.D. 201, 212 (E.D. Pa. 2011).

Since the Settlement Website and toll-free telephone helpline went live on October 3, 2024, as

of April 10, 2025, the Settlement Website has also received 36,012 unique visitors totaling 88,489 page

views. Angeion Decl. ¶ 18.

The lack of meaningful opposition to the Settlement thus weighs in favor of final approval. *See*

*Grinnell*, 495 F.2d at 463.

### 5. The remaining factors weigh in favor of approval.

*Grinnell Factors 8 and 9.* The eighth and ninth *Grinnell* factors, analyzing the range of

reasonableness in light of the best possible recovery and the attendant risks of litigation, support

approval as $2,425,000 is within "a range which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion[.]" *Wal-Mart*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.

1972)). Judging whether a settlement amount is reasonable "is not susceptible of a mathematical

equation yielding a particularized sum." *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

When the Settlement benefits are weighed against the pending litigation risks and potential alternative outcomes, the Settlement is more than reasonable. For example, absent this Settlement Agreement, Defendants could prevail on their legal arguments to defeat liability entirely, resulting in no recovery for the Class whatsoever.

**Grinnell Factor 7.** Defendants' inability to withstand a greater judgment was the single most determinative factor for settling (and relevant to Factor 8 as well). Somnia's Chief Financial Officer and Defendants' Counsel provided a tutorial on Defendants' finances, which revealed that Defendants are thinly capitalized entities with a wasting insurance policy who could not have satisfied a judgment, particularly with respect to the statutory damages of $1,000 per California Subclass Members provided by the CMIA. Joint Decl. ¶ 43; *Guippone*, 2016 WL 5811888, at *7 (noting that this factor favors final approval where sole remaining defendant "has no assets").

**Scope of release.** A final consideration is the scope of the Release. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 42 n.41 (courts may look to the scope of the release). In exchange for the relief described above, Plaintiffs, Class Members, and Subclass Members will fully release Defendants and related anesthesiologist providers under common ownership of Defendants from any and all claims that could have been brought in the First Amended Complaint arising from or related to the Security Incident. Agmt. §§ 2.42, 14. In sum, the Release is calculated to "achieve a comprehensive settlement that [will] prevent relitigation of settled questions

at the core of [this] class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). This factor weighs in favor of approval.

The Rule 23(e)(2) and *Grinnell* factors thus strongly support the conclusion that the Settlement is "fair, reasonable, and adequate."

**B.      The Class Notice Satisfies Rule 23(c)(2) and Due Process Rights.**

The Notice Plan completed under the Parties' supervision as set forth in the Settlement Agreement and approved in the Preliminary Approval Order constitutes the "best notice practicable under the circumstances," as required by Rule 23(c) and (e), and used notice by "mail, electronic means, [and] other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

Specifically, the Court-ordered Notice Plan was successfully implemented by the Claims Administrator, Angeion. PAO ¶ 14. It provided Class Members with easy-to-understand notice of the Settlement, their rights, and important deadlines and contact information. *See id.* at ¶¶ 15-16 (approving form and content of proposed notice and finding that proposed notice plan "meets the requirements of due process under the United States Constitution and of Rule 23, and constitutes the best notice that is practicable under the circumstances[.]") This is evidenced by, among other things, the number of valid claims and percentage of valid claims.

The Notice Plan provided direct notice to nearly 95% of the Class. Angeion Decl. ¶¶ 8-15 (detailing notice specifics). This percentage is eminently reasonable. *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (quoting, in part, Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf) ("The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. According to the Federal Judicial Center ('FJC'), a notice plan that reaches between 70 and 95 percent of the class is reasonable.")). Specifically, for the

553,257 unique Class Members, Angeion was able to send either email or first class mail notice to over 525,000 Class Members. *See* Angeion Decl. ¶¶ 8-15 (describing sending notice via first class mail and email, including finding current addresses for class members, resending notices, and mailing notice to parents and legal guardians of small percentage of Class Members who are minors). Further, Angeion created and maintains a Settlement Website (http://www.somniasettlement.com/), which allowed Class Members to securely submit Claim Forms and allows Class Members to view or download copies of the Claim Form, Long Form Notice, Settlement Agreement and Release, Preliminary Approval Order, Motion for Attorneys' Fees, Expenses, and Service Awards, and informs them of Settlement-related deadlines. *Id.* ¶¶ 16-18. Angeion also established a dedicated toll-free phone number to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id.* ¶ 19. Class Members may also leave a message for the Claims Administrator to provide updated information, request a copy of the notice and/or Claim Form be mailed to them, or to request a callback. The toll-free hotline is accessible 24 hours a day, 7 days a week. *Id*.

In addition to complying with the Court-approved Class Notice, Angeion, on behalf of Defendants, also provided notice under the Class Action Fairness Act ("CAFA") by timely notifying the appropriate federal and state officials. *Id.* ¶ 7.

In sum, the dissemination of the Class Notice complied fully with the Rule 23 requirements.

### C.    The Court Should Confirm Certification of the Class and California Subclass.

Plaintiffs respectfully request that the Court confirm its certification of the Class and California Subclass. As this Court previously found in granting preliminary approval, Plaintiffs' Class and California Subclass satisfy each factor of Rule 23(a). PAO ¶ 10. Namely, (i) numerosity is satisfied because there are 553,257 Class Members, Fed. R. Civ. P. 23(a)(1); (ii) commonality is satisfied because common questions of law and fact relate to Defendants' data security practices, Fed. R. Civ.

P. 23(a)(2); (iii) typicality is satisfied because Plaintiffs' claims are based on a unitary course of conduct by Defendants, Fed. R. Civ. P. 23(a)(3); and (iv) adequacy is satisfied by the Class representatives, who are not agnostic to class members and were not subject to unique defenses, and Class Counsel, who are active practitioners with substantial experience in class actions nationwide, include data breach classes actions. Fed. R. Civ. P. 23(a)(4); Joint Decl., Exs. A-B; ECF No. 83 (motion for attorneys' fees).

Likewise, as the Court previously found, under Rule 23(b)(3), "for purposes of settlement, the Class and California Subclass meet the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3)." PAO ¶ 10. The facts and analysis supporting class certification remain unchanged. Namely, Defendants' course of conduct and treatment of Class Members' Personal Information present a significant aspect of the case and can be resolved for all Class Members in a single adjudication and California Subclass Members also satisfy the predominance requirement for the additional reason that statutory damages would be available uniformly to them. Superiority is satisfied as there are no other pending actions and manageability is not an issue for settlement-only class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Finally, while not a requirement, the Class is ascertainable as it was based on Defendants' internal records, and the Subclass is as well, with one additional factor, state of residence. *See Vega v. Semple*, 2024 WL 2941657, at *13-14 (D. Conn. June 11, 2024) (finding ascertainability based on use of defendant's own records).

### D.    <u>The Request for Fees, Costs, and Service Awards is Reasonable.</u>[5]

Plaintiffs and Class Counsel respectfully believe that their request for fees, costs, and service awards is reasonable under Rule 23(h). *See* ECF No. 83. No Class Member objected to that request, for fees of $1,000,000 (31.5% of the total value of the Settlement), reimbursement of litigation

---

[5] Defendants take no position on Plaintiffs' and Class Counsel's request for fees, costs, and service awards.

expenses of $50,294.92, and service awards of $1,000 each to the nine Plaintiffs ($9,000 total). As articulated in Plaintiffs' motion for fees, costs, and service awards, this request is well-within the range approved routinely by courts in this Circuit and elsewhere.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement and enter the contemporaneously filed Proposed Final Approval Order, which was previously attached as an exhibit to the Settlement Agreement. ECF No. 79-1 (Ex. F).

Dated: April 10, 2025                                    Respectfully submitted,

By: */s/ Jason L. Lichtman*                              By: */s/ Todd S. Garber*
    Jason L. Lichtman                                       Todd S. Garber
    Sean A. Petterson                                       **FINKELSTEIN, BLANKINSHIP,**
    Margaret M. Becko                                       **FREI-PEARSON & GARBER, LLP**
    **LIEFF CABRASER HEIMANN**                               One North Broadway, Suite 900
    **& BERNSTEIN, LLP**                                     White Plains, NY 10601
    250 Hudson Street, 8th Floor                            914.298.3283
    New York, NY 10013                                      Email:  tgarber@fbfglaw.com
    212.355.9500
    Email:  jlichtman@lchb.com
          spetterson@lchb.com
          mbecko@lchb.com

*Attorneys for Plaintiffs and the Class*